170 F.3d 1197
 34 Bankr.Ct.Dec. 74, Bankr. L. Rep. P 77,910,
99 Cal. Daily Op. Serv. 1979,
1999 Daily Journal D.A.R. 2603
 In re: DAK INDUSTRIES, INCORPORATED, a California
Corporation, Debtor.
Edward M. Wolkowitz, Chapter 7 Trustee, Plaintiff-Appellant,
v.
American Research Corporation; Discopylabs; Hyosung
(America), Inc.; Japan Freight Consolidators,
Home Theatre Products, Defendants-Appellees.
 No. 97-56375.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 1, 1999.
Decided March 19, 1999.
 
 Stuart Koenig and James B. Yobski, Bronson, Bronson & McKinnon, Los Angeles, California, for the plaintiff-appellant.
 Richard Esterkin, Morgan, Lewis & Bockius, Los Angeles, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; William Matthew Byrne, Jr., Chief District Judge, Presiding. D.C. No. CV-96-01963-WMB
 Before: GOODWIN, BRUNETTI, and T.G. NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Trustee of the bankruptcy proceedings of DAK Industries, Inc. ("DAK") sued certain creditors to recover payments made to them by DAK during the 90 days preceding the bankruptcy petition. The bankruptcy court found that the Trustee had not established that DAK was insolvent during the preference period, as required by 11 U.S.C. § 547(b), and, therefore, granted judgment in favor of the creditors. The district court affirmed the ruling of the bankruptcy court. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm the judgment.FACTS
 
 
 2
 DAK Industries was engaged in direct marketing of consumer electronics, and owed much of its 30-year success to the unique catalogue selections and style created by its founder, Drew Alan Kaplan. After many successful years of operation, DAK began to experience financial problems and sought bankruptcy protection under Chapter 11 in the spring of 1992. DAK operated as a debtor-in-possession for two and one-half years (June 1992 to October 1994). However, DAK was not able to regain its financial health, and lost approximately $14 million during those years. Ultimately, DAK's Chapter 11 proceeding was converted to one under Chapter 7.
 
 
 3
 The Trustee initiated the present action to recover allegedly preferential payments made to various suppliers and creditors during the 90-day period preceding DAK's original Chapter 11 petition. A two-week trial followed, during which the parties vigorously contested DAK's solvency during the preference period, and both sides submitted extensive evidence and expert testimony on that issue.
 
 
 4
 After reviewing the conflicting evidence, the bankruptcy court determined that DAK was, during the time in question, a going concern, and selected as the most appropriate valuation of DAK a report, submitted by one of the creditors' experts, which concluded that DAK was solvent during the preference period. On appeal, the district court affirmed the findings of the bankruptcy court. We review the bankruptcy court's factual findings for clear error, without deference to the decision of the district court. In re Lewis, 113 F.3d 1040, 1043 (9th Cir.1997); In re Claremont Acquisition Corp., 113 F.3d 1029, 1031 (9th Cir.1997).
 
 DISCUSSION
 
 5
 To succeed in a preference action, a trustee must show, inter alia, that the debtor was insolvent at the time of the contested transaction.[1] 11 U.S.C. § 547(b).[2] The Bankruptcy Code defines insolvency, for a corporation, as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at fair valuation...." 11 U.S.C. § 101(32). Although the Code does not define "fair valuation," courts have generally engaged in a two-step process of analysis. See, e.g., Matter of Taxman Clothing Co., 905 F.2d 166, 169-70 (7th Cir.1990). First, the court must determine whether a debtor was a "going concern" or was "on its deathbed." Second, the court must value the debtor's assets, depending on the status determined in the first part of the inquiry, and apply a simple balance sheet test to determine whether the debtor was solvent.[3] Id. at 170. We agree that a "fair valuation" of a debtor's assets must begin with a determination of whether a debtor is "a going concern" and end with the application of a balance sheet test to determine solvency. See generally 2 Collier on Bankruptcy p 101.32 (15th ed.1996).
 
 
 6
 In this case, the bankruptcy court determined that DAK was a going concern during the preference period, relying primarily on the fact that DAK continued to conduct business under Chapter 11 protection for two and one-half years. In light of the amount of business transacted by DAK during the preference period and the years that followed, as well as DAK's ability to pay its operating expenses during the same period, this finding was not erroneous.
 
 
 7
 The bankruptcy court went on to find that DAK was solvent during the preference period. The court came to this conclusion after hearing testimony from numerous expert witnesses and evaluating many reports and exhibits submitted by the parties. As the evidence in this case demonstrates, the precise value of a company as a going concern is far from certain. The bankruptcy court did not err by finding that the creditors' report was the most credible and accurate assessment of DAK's financial status, particularly in light of the fact that the valuation evidence submitted by DAK was based on liquidation values.
 
 
 8
 We recognize that the bankruptcy court used some language of equitable insolvency in its disposition of this case. See In re DAK Industries, 195 B.R. 117, 126 (Bankr.C.D.Cal.1996). However, the bankruptcy court applied a balance sheet test rather than an equitable insolvency test because the creditors' analysis, on which the court relied in making its determination that DAK was solvent during the preference period, focused on DAK's positive equity on a balance sheet basis.
 
 CONCLUSION
 
 9
 The Bankruptcy Court correctly determined that DAK was both a going concern and solvent during the 90-day period preceding its original Chapter 11 petition. The challenged judgment accordingly is AFFIRMED.
 
 
 
 [1]
 In general, the trustee in a preference action is entitled to rely on a presumption that the debtor was insolvent during the preference period. However, if a creditor produces some evidence that the debtor was solvent, as in this case, the trustee bears the burden of proof with respect to the debtor's insolvency. See In re Koubourlis, 869 F.2d 1319, 1322 (9th Cir.1989)
 
 
 [2]
 Section 547(b) provides, in pertinent part:
 [T]he trustee may avoid any transfer of an interest of the debtor in property--
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made--
 (A) on or within 90 days before the date of the filing of the petition; ...
 (5) that enables such creditor to receive more than such creditor would receive if--
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
 The only element disputed by the parties in this appeal is the third-the solvency of the debtor.
 
 
 [3]
 If the debtor was a going concern, the court will determine the fair market price of the debtor's assets as if they had been sold as a unit, in a prudent manner, and within a reasonable time. If the company was on its deathbed, i.e., only nominally extant, then the court will determine the liquidation value of the assets, such as a price expected at a foreclosure sale. See generally Taxman, 905 F.2d at 169-70