In re SIERRA STEEL, INC., Debtor.

SIERRA STEEL, INC., Appellant,

v.

TOTTEN TUBES, INC., Appellee.

BAP No. NV–88–1005–PMoR.
Bankruptcy No. 84–00359.
Adv. No. 86–0071.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Oct. 20, 1988.

Decided Feb. 6, 1989.

John A. White, White Law Chartered, Reno, Nev., for appellant.

Howard Cunningham, Reno, Nev., for appellee.

## OPINION

Before PERRIS, MOOREMAN and RUSSELL, Bankruptcy Judges.

PERRIS, Bankruptcy Judge.

Appellant/debtor-in-possession, Sierra Steel, Inc. ("debtor") filed an adversary proceeding against appellee Totten Tubes, Inc. ("Totten") seeking to recover a transfer under 11 U.S.C. § 547.[1] After trial, the bankruptcy court concluded that the transfer could not be avoided under section 547 because the debtor was solvent at the time of the transfer. We affirm.

## FACTS

On February 13, 1984, debtor transferred $36,617.57 to one of its creditors, Totten, on account of an antecedent debt. On May 10, 1984, 87 days after the transfer, debtor filed a Chapter 11 petition. Debtor filed an adversary proceeding against Totten seeking to set aside the transfer under § 547. The only element of debtor's section 547 claim at issue on appeal is whether debtor was insolvent at the time of the transfer.[2]

In documents filed with the bankruptcy court, the debtor varied the position it took regarding its solvency. In Exhibit A to the bankruptcy petition and the schedules filed on June 1, 1984 the debtor claimed to be solvent at the time it filed bankruptcy. The debtor claimed that it was insolvent in its disclosure statement filed in September, 1984, its amended schedules filed September 8, 1987 and its amended schedules filed July 20, 1987.

The treatment to be accorded to two liabilities is at issue in this appeal. The

**1.** All references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.*, unless otherwise indicated.

**2.** Totten admits that all elements of a preference are present except that the transfer was made when debtor was insolvent and the transfer en-

abled it to receive more than it would have in a Chapter 7 liquidation. The bankruptcy court based its decision solely on the insolvency issue and did not address whether the transfer enabled Totten to receive more than it would have in a Chapter 7.

question is how much, if anything, should be included in the liability side of the balance sheet for deferred income taxes and a disputed claim by Tahoe Savings & Loan Association arising out of the construction of the Hof–Brau Condos. The debtor treated these liabilities in an inconsistent manner in its original and amended schedules and disclosure statement; sometimes it included the alleged liabilities, sometimes it did not.

Following trial, the bankruptcy court concluded neither alleged liability should be considered in the solvency analysis and that debtor was solvent at the time of the transfer. Debtor filed a timely notice of appeal.

### ISSUE

Did the bankruptcy court commit reversible error in finding that debtor was solvent on the date of the transfer to Totten?

### STANDARD OF REVIEW

A determination of insolvency under section 547 is a finding of fact. *E.g., Clay v. Traders Bank of Kansas City,* 708 F.2d 1347, 1350 (8th Cir.1983). Findings of fact will not be reversed unless clearly erroneous. Bankruptcy Rule 8013. A finding is clearly erroneous if, after a review of the record, the Panel is left with a definite and firm conviction that error has been committed. *In re Burkhart,* 84 B.R. 658, 660 (9th Cir.BAP 1988). The appellant has the burden of showing that a bankruptcy court's findings of fact are clearly erroneous. *Id.* Similarly, the appellant has the responsibility to file an adequate record on appeal. *Id.*

### DISCUSSION

a. *Insolvency in general under section 547.*

In order to prevail on a preference claim, the trustee or debtor-in-possession must establish that the transfer was made while the debtor was insolvent. Section 547(b)(3). Under Section 101(31) insolvent means "financial condition such that the sum of [an] entity's debts is greater than all of [an] entity's property, at a fair valuation, exclu-

sive of ..." property that may be exempted and property that has been fraudulently concealed or transferred. Thus, under this "balance sheet" test a debtor is insolvent when its liabilities exceed its assets.

▇ The "debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." Section 547(f). This presumption does not shift the ultimate burden of proof, rather it merely shifts the initial burden of going forward with the evidence. 4 *Collier on Bankruptcy* ¶ 547.06 (15th Ed.1988). Once the transferee comes forward with substantial evidence of solvency, the presumption vanishes and the plaintiff must come forward with sufficient evidence in order to meets its burden of proving insolvency. *See* Russell, *Bankruptcy Evidence Manuel,* § 301.3 (West 1987); *see also In re Candor Diamond Corp.,* 68 B.R. 588, 590–591 (Bankr.S.D.N.Y.1986); 4 *Collier on Bankruptcy* ¶ 547.06.

In this case, the bankruptcy court found the debtor's initial schedules, which testimony established were accurate when prepared and which showed assets of $4,304,-148.21 and liabilities of $2,489,827.56, were sufficient evidence to rebut the presumption of insolvency. Given the lack of a trial transcript in the appellate record, we cannot determine that this finding was clearly erroneous.

The bankruptcy court then considered whether the debtor met its burden of persuasion on the insolvency issue. The debtor attempted to meet its burden by relying on the reconstructed balance sheets, dated January 31, 1984 and April 30, 1984, that were submitted as its third amendment to the schedules and that were apparently submitted as exhibits at trial. The bankruptcy court determined that the balance sheets of January 31 and April 30 differed from the debtor's initial schedules in three significant respects: (1) the schedules showed accounts receivables of approximately $2,489,000 while the balance sheets showed accounts receivables of approximately $1,800,000; (2) the balance sheets reflected liabilities for deferred income tax while the schedules did not; and (3) the

balance sheets reflected a $300,000 contingent liability for the Tahoe Savings/Hof–Brau Condos litigation, while the schedules did not.

The court determined that a discount of the account receivables was appropriate, but that the debtor did not prove that the deferred income tax entry and the $300,000 contingent liability entry were properly included as liabilities in determining insolvency. After deleting these liabilities, the bankruptcy court found that debtor was solvent on the date of the transfer. Debtor contends that the bankruptcy court's determinations with respect to the deferred income tax and the contingent liability constitute reversible error.

b. *Deletion of the deferred income tax.*

■ The bankruptcy court made a factual determination that the inclusion of deferred federal income tax was not "born out by the evidence" because debtor was "operating at significant losses and would not have had to pay income taxes for the period in question." Debtor has presented no evidence on appeal that it was not operating at a loss or that it would ever have to pay income tax for the period in question. Debtor refers to the transcript as a source of evidence that the deferred taxes were properly included as a liability, but debtor did not include the transcript in the record on appeal. Given the deficiencies in the record on appeal, debtor has not established that this finding was clearly erroneous.

Rather than attacking this determination as a factual determination, however, debtor

contends that it was clearly erroneous as a matter of law because Generally Accepted Accounting Principles ("GAAP") control in bankruptcy insolvency determinations and GAAP provide that deferred income tax liability is properly considered a debt for purposes of determining insolvency.

■ The authorities cited by the debtor do not compel the conclusion that the bankruptcy court must follow GAAP in making solvency determinations.[3] Requiring application of GAAP would make accountants and the board which promulgate GAAP the arbiters of insolvency questions. Clearly the Code provides that judges should make such decisions. Furthermore, there is no policy reason why judges should not be allowed to consider subsequent events such as the actual collection rate for receivables, in valuing assets and determining liabilities. Thus although GAAP are relevant, they are not controlling in insolvency determinations.

Even if the Panel were to follow GAAP in making an insolvency determination under section 547, there is no evidence before the Panel that GAAP requires the inclusion of deferred income tax in determining insolvency.[4] Accordingly, the bankruptcy court's determination to exclude the alleged deferred tax liability was not clearly erroneous.[5]

c. *Deletion of the $300,000 contingent liability.*

With respect to the $300,000 contingent liability for litigation, the bankruptcy court stated:

> courts made factual determinations that accounting principles required the inclusion of certain liabilities in making an insolvency determination. There is no evidence before us that requires such a factual determination in this case.

**3.** Debtor cites *In re Colonial Discount Corp.,* 807 F.2d 594 (7th Cir.1986) *cert. denied* 481 U.S. 1029, 107 S.Ct. 1954, 95 L.Ed.2d 526 (1987) for the proposition that financial reports not prepared in accordance with generally accepted accounting principles will not be given weight in an insolvency determination. However, the financial report rejected by the court in *Colonial Discount* was based on an experimental accounting method and, more importantly, was prepared over a year before the transfer in question.

**4.** In *In re Art Shirt, Ltd.,* 68 B.R. 316 (Bankr.E. D.Pa.1986) and *Telegraph Savings and Loan Assoc. v. FSLIC,* 564 F.Supp. 880, 886–67 (N.D.Ill. 1982), *aff'd* 703 F.2d 1019 (7th Cir.1983) the

**5.** The bankruptcy court also determined that deferred income tax should not be considered in determining insolvency because it does not represent a debt under the Code, which is liability on a claim. The Panel need not determine whether deferred tax liability could be a debt under the Code because the factual determination that there was no deferred income tax liability is not clearly erroneous given the limited record on appeal.

[T]his does not qualify as a debt. It is an unliquidated disputed claim. There can be no liability upon plaintiff's claim until judgment establishing debtor's liability is entered. The sum of $300,000 should be deleted from the balance sheet.

■ To the extent the bankruptcy court refused to consider the $300,000 claim only because it was a disputed or unliquidated claim, its determination was erroneous. A "debt" is defined as liability on a claim. 11 U.S.C. § 101(11). A claim includes a right to payment, even if it is contingent, unmatured, or not reduced to judgment. 11 U.S.C. § 101(4)(A). Since claims may be disputed or contingent, disputed or contingent liabilities must be included in determining total indebtedness for purposes of determining insolvency. *See* 2 *Collier on Bankruptcy* ¶ 101.31[5].

A contingent liability must be reduced, however, to its present or expected amount before a determination on insolvency can be made. *In re Xonics Photochemical, Inc.*, 841 F.2d 198, 200 (7th Cir.1988). To determine a contingent liability, one must discount it by the probability that the contingency will occur and the liability will become real. *Id.*

■ Debtor conceded at oral argument that it never had to and will never have to pay anything on the $300,000 claim. Given debtor's concession, and reducing the claim to its present value of zero, we cannot say that the bankruptcy court erred in determining that the $300,000 claim does not qualify as a debt.[6]

## CONCLUSION

The bankruptcy court's decision not to include the deferred income tax from its insolvency analysis was not clearly erroneous. As to the $300,000 contingent claim, to the extent the bankruptcy court deleted this claim solely because it was disputed, its decision was in error. However, the

debtor conceded that this claim has no value, and on that basis, the bankruptcy court's determination that the $300,000 claim does not qualify as a debt is affirmed.

---

**6.** Debtor contends that we should not determine the amount of the claim with the benefit of hindsight, but rather we should value the claim based upon the knowledge that existed at the time of the transfer. However, as explained above, there is no policy reason why bankruptcy judges should not be allowed to consider subsequent events in valuing assets or determining liabilities. For example, judges regularly consider the actual collection rates in valuing receivables.