7 F.3d 234
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re Galen Monroe OAKES; Beulah L. Oakes, Debtors,
Galen Monroe OAKES; Beulah L. Oakes, Plaintiffs-Appellants,
v.
David C. SPALDING, Betty B. Spalding; Richard Wuske; Nancy
Wuske, Defendants-Appellees.
 No. 92-3935.
 United States Court of Appeals, Sixth Circuit.
 Sept. 3, 1993.
 
 Before KENNEDY and SILER, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs Galen M. Oakes and Beulah L. Oakes (debtors) appeal from the district court's order affirming the bankruptcy court's finding that debtors failed to prove insolvency pursuant to 11 U.S.C. § 547(b)(3) and the final judgment in favor of Defendants David C. Spalding, Betty B. Spalding, Richard Wuske, and Nancy Wuske. The issues are whether the district court erroneously: (1) determined that defendants rebutted the 11 U.S.C. § 547(f) presumption of insolvency; (2) failed to consider the liabilities and assets of Galen Oakes separately from those of Beulah Oakes; (3) reduced debtors' liabilities without reducing assets; and (4) considered the December 31, 1989, financial statement and schedules in the petition for relief. For the reasons herein, we affirm in part and reverse and remand in part.
 
 I.
 
 2
 On June 5, 1990, defendants obtained a judgment for $54,000.00 against Galen Oakes and North Canton Centre, Inc. Judgment liens were filed in Stark County and Carroll County, Ohio, on June 6, 1990, and June 22, 1990. On August 14, 1990, debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code, Title 11 of the United States Code. On November 13, 1991, debtors brought an 11 U.S.C. § 547(b) adversary proceeding against defendants to avoid the judgment liens as preferential. The bankruptcy court found that debtors could not avoid the judgment liens as preferential because they were not insolvent at the time of the judgment. See 11 U.S.C. § 547(b)(3). The district court affirmed the bankruptcy court.
 
 
 3
 A determination of insolvency under § 547 is a factual finding and will not be reversed unless clearly erroneous. Clay v. Traders Bank, 708 F.2d 1347, 1350 (8th Cir.1983); see Bankruptcy Rule 8013. "A finding is clearly erroneous if, after a review of the record, the [court] is left with a definite and firm conviction that error has been committed." In re Sierra Steel, Inc., 96 B.R. 275, 277 (Bankr. 9th Cir.1989) (citation omitted). "The appellant has the burden of showing that a bankruptcy court's findings of fact are clearly erroneous." Id.
 
 11 U.S.C. § 547(b) provides that:
 
 4
 the trustee may avoid any transfer of an interest of the debtor in property--
 
 
 5
 (1) to or for the benefit of a creditor;
 
 
 6
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 
 
 7
 (3) made while the debtor was insolvent;
 
 
 8
 (4) made--
 
 
 9
 (A) on or within 90 days before the date of the filing of the petition; or
 
 
 10
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 
 
 11
 (5) that enables such creditor to receive more than such creditor would receive if--
 
 
 12
 (A) the case were a case under Chapter 7 of this title;
 
 
 13
 (B) the transfer had not been made; and
 
 
 14
 (C) such creditor received payment of such debt to the extent provided by the provision of this title.
 
 
 15
 "In order to prevail on a preference claim, the trustee or debtor-in-possession must establish that the transfer was made while the debtor was insolvent." In re Sierra, 96 B.R. at 277. "Under this 'balance sheet' test a debtor is insolvent when its liabilities exceed its assets." Id. The § 547 presumption of insolvency "does not shift the ultimate burden of proof, rather it merely shifts the initial burden of going forward with the evidence." Id. "Once the transferee comes forward with substantial evidence of solvency, the presumption vanishes and the plaintiff must come forward with sufficient evidence in order to meets [sic] its burden of proving insolvency." Id.
 
 
 16
 The bankruptcy court, in making its determination that debtors had not met their burden of proving insolvency, considered debtors': (1) petition for relief; (2) December 31, 1989, financial statement; and (3) 11 U.S.C. § 1125 disclosure statement. Debtors did not, however, present evidence regarding the value of their assets on June 6, 1990, the date the first judgment lien was filed.
 
 
 17
 In the petition for relief, debtors list liabilities of $44,899,063.62 in schedule A and assets of $29,793,124.24 in schedule B. Debtors list contingent liabilities of $18,317,823.46 in schedule A-3(1) arising from guarantees for others' obligations. The bankruptcy court focused on the following contingent liabilities listed in schedule A-3(1) and on two secured liabilities listed in schedule A-2.
 
 
 18
 In schedule A-3(1), debtors list guarantees to Central Trust Company of Northeastern Ohio, N.A. and Union National Bank on $8,405,131.75 in obligations for which Graham Square, Inc. is the principal debtor. The bankruptcy court noted that in Graham Square's voluntary petition for relief signed by Galen Oakes as president and filed on June 6, 1990, the real estate securing these obligations is valued at $12,100,000.00.
 
 
 19
 Debtors list guarantees to Society National Bank on $2,933,101.39 in obligations for which Foxboro Square, Inc. is the principal debtor. The bankruptcy court stated that these obligations are secured by real estate, the value of which was not presented to the bankruptcy court.
 
 
 20
 Finally, debtors list a guarantee of $1,216,191.08 for an obligation owed by Waynesburg Centre to Central Trust. The bankruptcy court found that there was no evidence of default or arrearage in payments or of a deficiency in the value of the property securing the obligation.
 
 
 21
 In the schedule A-2 secured liabilities, the bankruptcy court found that, although debtors list a $3,350,000.00 obligation to Commonwealth Life Insurance Company, their disclosure statement indicates that they had no personal liability to Commonwealth. The bankruptcy court noted that in schedule A-2, debtors list an obligation to Aetna Life Insurance Company for $9,700,000.00, and in schedule A-3(1) list a $2,000,000.00 guarantee on that same obligation. Thus, the court found that debtors' liability in June 1990, was not as substantial as stated in the petition for relief and reduced debtors' scheduled liabilities by $11,050,000.00. The court found that debtors' liability to Aetna is limited to $2,000,000.00, rather than $9,700,000.00, and debtors are not personally liable on the $3,350,000.00 obligation to Commonwealth. Therefore, debtors' liabilities were reduced to $33,849,063.42, which exceeds their assets by $4,055,939.18. However, the bankruptcy court further noted that debtors' contingent liabilities are limited to the deficiency amount, if any, after the sale of the collateral. The court found that it is doubtful whether the $18,317,823.46 of contingent liabilities are sufficient to establish insolvency and granted final judgment in defendants' favor because: (1) debtors failed to prove insolvency, as they "produced no evidence suggesting that [their] guarantees would ever be enforced" and "nothing was offered to indicate the probability of a deficiency balance, the only situation in which [debtors] would be required to honor the guarantees," and (2) defendants satisfactorily rebutted debtors' presumption of insolvency.
 
 
 22
 The district court found that the bankruptcy court correctly reduced debtors' schedule A-2 liabilities based upon their admissions that they are not personally liable on the obligation to Commonwealth and because the liability to Aetna is at most a $2,000,000.00 guarantee. As the Aetna liability already appeared in schedule A-3(1), it was permissible to reduce their liabilities by the full amount of the Aetna obligation listed in schedule A-2. Accordingly, total liabilities were reduced to $31,849,063.62, which exceeds debtors' scheduled assets by only $2,055,939.38.
 
 
 23
 As guarantees are not taken at face value in determining their liability value, and because the $8,405,131.75 in Graham Square guarantees were more than adequately secured, the bankruptcy court found that defendants had satisfactorily rebutted debtors' presumption of insolvency. Because debtors proffered no evidence concerning the liability value of the guarantees, the district court determined that debtors had not met their burden of proving insolvency.
 
 II.
 
 24
 "[T]he debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). This presumption may be overcome, and "the trustee has the burden of proving the avoidability of a transfer under subjection (b) of this section." Id. § 547(g). The creditor has the burden of going forward with evidence to rebut the insolvency presumption. Matter of Brooks, 44 B.R. 963, 965 (Bankr.S.D.Ohio 1984). Though the schedules show liabilities exceeding assets by over $15,000,000.00, debtors' financial situation on the date the transfer occurred in June 1990 was not as extreme. The debt to Aetna, listed at $9,700,000.00, is limited to $2,000,000.00 personal liability, according to Galen M. Oakes' testimony. There is no personal liability on the $3,350,000.00 debt to Commonwealth. These two figures alone reduce debtors' scheduled liabilities by approximately $11,000,000.00, to roughly $33,500,000.00. Galen M. Oakes testified that any liabilities listed on Schedule A-3(1) as a guarantor would be limited to any deficiency amount after the sale of the collateral. Thus, the court held that it is doubtful whether the $18,000,000.00 in contingent liabilities is sufficient to render debtors insolvent.
 
 
 25
 Debtors continue to have the burden of proof concerning insolvency. Brooks, 44 B.R. at 965. Although contingent liabilities are included in determining whether a debtor is insolvent for preference purposes, they cannot be included at face value. Matter of Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th Cir.1988); In re Sierra Steel, Inc., 96 B.R. 275 (Bankr. 9th Cir.1989). To include contingent liabilities at full value would often render an entity insolvent as of the date the obligations were assumed, which would cause an "absurd" result. Xonics, 841 F.2d at 199. Instead, the "liability must be reduced to its present, or expected, value before a determination can be made whether the firm's assets exceed its liabilities." Id. "To determine a contingent liability, one must discount it by the probability that the contingency will occur and the liability will become real." Sierra, 96 B.R. at 279. To determine the value of a contingent liability, the court should multiply the total debt guaranteed by the probability that the debtor will be required to fulfill the guarantee. Covey v. Commercial Nat'l Bank, 960 F.2d 657, 659 (7th Cir.1992). Contingent liabilities are uncertain and frequently never become actual liabilities. Xonics, 841 F.2d at 200. Because debtors proffered no evidence concerning the liability value of the guarantees, the district court did not erroneously determine that debtors did not meet their burden of proving insolvency.
 
 III.
 
 26
 Debtors argue that the bankruptcy court erroneously failed to consider the liabilities and assets of Galen Oakes separately from those of Beulah Oakes because the judgment liens are solely against Galen Oakes. The bankruptcy court stated, however, that:
 
 
 27
 No showing has been made by either party as to the appropriate division of assets and liabilities between the [Oakes]. The court will not, for the purposes of this opinion, attempt any such allocation but will, as indeed the parties have done in significant part, proceed as though Galen M. Oakes is solely possessed of the scheduled assets and is alone responsible for the listed liabilities.
 
 
 28
 The district court properly concluded that the bankruptcy court's decision was not clearly erroneous, because debtors did not attempt to allocate the assets and liabilities, chose to file a joint petition for relief, and did not object to the joint procedure at trial.
 
 IV.
 
 29
 Debtors argue that the bankruptcy court erroneously reduced their liabilities by the amount of the Commonwealth and Aetna obligations listed in schedule A-2 without also reducing their assets listed in schedule B by the value of the real estate securing those obligations. See Clay, 708 F.2d at 1347. The district court concluded that "[f]inding that the Commonwealth and the Aetna obligations do not belong in the Oakes' schedule of liabilities does not require a finding that the Oakes overstated the value of their assets. Indeed, the value of the assets securing those obligations should remain constant regardless of who is liable for those obligations."
 
 
 30
 Debtors assert that the Aetna note contained an exculpatory clause, which led to the inconsistent treatment. Galen Oakes' testimony on redirect examination stated:
 
 
 31
 Q. When there was a discussion that you only have personal liability of some 2 million on the Aetna Commonwealth loan--in fact, as long as the properties are held, the entire debt is due; is it not?
 
 
 32
 A. Yes.
 
 
 33
 Q. Both as to Aetna's nine point seven (9.7) million and the Commonwealth three point eight (3.8) million?
 
 
 34
 A. That is true of both, yes.
 
 
 35
 This clause states that in the event of default, the debt will be collected from the mortgage security assets, not from Galen Oakes. The district court found that Oak Park Centre (two parcels) continues to be an asset of Galen Oakes, while his personal liability to Aetna is for $2,000,000.00. To the extent that Aetna and Commonwealth have mortgages or liens on this property, the full value of the property does not belong to Galen Oakes, even though he is not "personally liable." While it may be technically correct that Oak Park Centre belongs to Oakes, those creditors retained the right to take the asset from him to the extent of their liens (mortgages). This right was not recognized by the bankruptcy court in determining whether the debtor was solvent. Thus, the district court is reversed and the case is remanded to account for that right.
 
 V.
 
 36
 Finally, debtors argue that the bankruptcy court erroneously considered the December 31, 1989, financial statement and the schedules in their petition for relief. The district court properly determined that although the financial statement may be of slight value in considering debtors' financial position in June 1990, it was not irrelevant. Moreover, because debtors failed to produce more probative evidence, the schedules in debtors' petition for relief were properly considered by the bankruptcy court in measuring the amount of debtors' assets and liabilities.
 
 
 37
 This matter is affirmed in part and remanded in part for further proceedings consistent with this opinion.