**UNITED STATES TRUSTEE,**
Appellant,

v.

**John E.S. MOHR, et al., Appellees.**

No. 3:–10–cv–176.
Bankruptcy No. 09–30487.

United States District Court,
S.D. Ohio,
Western Division at Dayton.

Aug. 30, 2010.

**ENTRY AND ORDER AFFIRMING THE FINAL JUDGMENT OF THE BANKRUPTCY COURT AND TERMINATING THIS CASE**

THOMAS M. ROSE, District Judge.

This is the timely appeal of a final judgment entered by United States Bankruptcy Judge Lawrence S. Walter on March 15, 2010 (the "Decision"). The Decision was entered in Bankruptcy Case No. 09–30487 filed by Appellees John E.S. Mohr ("Mohr") and Shelly I Staddon ("Staddon") (collectively hereinafter the "Debtors") in the United States Bankruptcy Court for the Southern District of Ohio, Western Division at Dayton. The United States Trustee ("UST") in the bankruptcy case is the Appellant in this case.

The Decision being appealed is Docket Number 94 in the Bankruptcy Case. Therein, the Bankruptcy Court denied motions to dismiss filed by the UST and Don Wright Realty. This Court has subject matter jurisdiction over this Appeal pursuant to 28 U.S.C. § 158(a)(1).

The Appellant's Brief was filed on June 18, 2010, the Appellee's Brief was filed on

July 22, 2010 and the Appellant's Reply Brief was filed on August 11, 2010. Don Wright Realty has not appealed the Decision. The UST's appeal is, therefore, ripe for decision.

The UST identifies two issues for review on appeal:

**Whether the Bankruptcy Court erred when it refused to consider evidence on an element of proof in the case: whether the debtors had "primarily consumer debts" under 11 U.S.C. § 707(b); and**

**Whether the Bankruptcy Court erred when it held that the meaning of the term "debt" under 11 U.S.C. § 707(b) included amounts that a creditor may not assert against the debtor due to the statutory limitation on damages for lost future rent under 11 U.S.C. § 502(b)(6).**

A brief factual background will first be set forth followed by a procedural background, the standard of review and an analysis of the issues presented by Appellant for review. The Factual Background here is taken from the Decision and is not in dispute with the Statement of Facts presented by the UST.

## FACTUAL BACKGROUND

Prior to their bankruptcy filing, the Debtors owned and operated a business on commercial property leased from Don Wright Realty. The five-year lease agreement was entered into on July 17, 2002. An addendum to the lease extended its term until November 30, 2012.[1] The business closed and the Debtors ceased paying rent in December of 2008. When the Debtors closed their business, nearly four years remained on the lease.

On January 31, 2009, the Debtors filed a voluntary Chapter 7 Bankruptcy Petition. In their schedules, the Debtors listed assets totaling $813,950.37. They also listed secured claims totaling $411,644.13, unsecured priority claims totaling $5,570.90 and unsecured, non-priority claims totaling $484,001.91.

The amount for unsecured, non-priority claims included $340,000.00 related to the Debtor's commercial lease with Don Wright Realty. This amount included the "balance left due" which was the rent and additional costs that would have been incurred on the lease through November of 2012.

As reported in their bankruptcy schedules, Mohr earned $48,000 per year as a government contracts consultant and Staddon earned $71,680 per year as a school teacher. Together, their scheduled gross income was almost $120,000 per year and their monthly take-home pay was $7,400.66.

As a result of listing what the Debtors believed was the full balance owed on the commercial lease, the amount of their business debts exceeded the amount of their consumer debts. Consequently, they categorized their debts on their petition as "primarily business" in nature.

On June 1, 2009, the UST filed a motion to dismiss the Debtors' Chapter 7 case pursuant to 11 U.S.C. §§ 707(a) and 707(b). Don Wright Realty subsequently filed its own motion to dismiss containing arguments similar to those offered by the UST. The UST and Don Wright Realty asserted that the Debtors erroneously inflated the amount of debt owed to Don Wright Realty by scheduling the full amount owed on the lease instead of the amount of the claim that would be allow-

---

1. The addendum provided that the Debtors were to pay $4,583.33 per month and fees for common area maintenance, real estate taxes and insurance costs on a pro rata basis.

able under 11 U.S.C. § 502(b)(6). Had the Debtors used § 502(b)(6) to cap the commercial lease debt, the Debtors' total debt would have been primarily consumer debt.

At the hearing conducted by Judge Walter, Mohr testified that the $340,000 amount that he showed on the bankruptcy schedules was provided to him directly by a representative of Don Wright Realty prior to the bankruptcy filing. Also, Don Wright Realty initially filed a proof of claim in the bankruptcy case listing the amount due on the lease as $587,366.17. Following the UST's filing of its motion to dismiss raising the issue of the § 502(b)(6) cap, Don Wright Realty amended its proof of claim lowering the amount claimed due to the lease to $86,840.96. This is the amount Don Wright Realty believes is allowable once capped by the statutory provision set forth in § 502(b)(6).

## PROCEDURAL BACKGROUND

The Debtors' Bankruptcy Petition for Chapter 7 relief was filed on January 31, 2009. On the cover page of their petition, they designated the nature of their debts as "primarily business debts."

The UST believed that the value of Don Wright Realty's claim was substantially less that the amount listed by the Debtors on their bankruptcy schedules. Thus, on June 1, 2009, the UST timely filed a motion to dismiss the Debtors' case for abuse under 11 U.S.C. § 707. The UST filed this motion to dismiss for three reasons. First, because the Debtors caused an unreasonable and consequential delay in the administration of their bankruptcy case by improperly asserting that they were business debtors. Second, for bad faith under 11 U.S.C. § 707(b)(3)(A) because the Debtors failed to adequately support their contention that the nature of their debts was "primarily business." Third, because the Debtors would have up to $2,400 per

month in discretionary income to repay their creditors up to $144,000 over the life of a five-year Chapter 13 repayment plan after making reasonable adjustments to their housing costs. The Debtors opposed this motion.

On September 3, 2009, the Bankruptcy Court conducted a hearing on the UST's Motion To Dismiss. Further briefing on the scope of the inquiry the Bankruptcy Court should make on debt characterization issues was the authorized.

The Bankruptcy Court's written opinion on the motion to dismiss was issued on March 15, 2010. The Bankruptcy Court determined that whether the Debtors have primarily consumer or business debts should be determined by the amounts the Debtors listed on their bankruptcy schedules as of the date their petition was filed rather than the evidence presented at the hearing. The Bankruptcy Court also held that 11 U.S.C. § 502(b)(6) could not be applied when scheduling debts and calculating whether a debtor has primarily consumer debts. The Bankruptcy Court concluded that the Debtors have primarily business debts.

Thus, the UST's motion to dismiss was denied. It is from this Decision that the UST appeals.

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's findings of fact, whether based upon oral or documentary evidence, for clear error. *In re Baker & Getty Financial Services, Inc.*, 106 F.3d 1255, 1259 (6th Cir.1997), *cert. denied*, 522 U.S. 816, 118 S.Ct. 65, 139 L.Ed.2d 27 (1997). A factual finding is clearly erroneous when, although there is evidence to support it, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been commit-

ted." *United States v. Ayen,* 997 F.2d 1150, 1152 (6th Cir.1993) (quoting *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Clear error also exists when factual findings are made without properly taking into account substantial evidence to the contrary. *Indmar Products Co., Inc. v. C.I.R.,* 444 F.3d 771, 778 (6th Cir.2006) (citing *People Helpers Found., Inc. v. City of Richmond, Va.,* 12 F.3d 1321, 1329 (4th Cir.1993)).

■ A factual finding is not to be disturbed unless there is "most cogent evidence of mistake or miscarriage of justice." *In re Caldwell,* 851 F.2d 852, 857 (6th Cir.1988) (citing *Slodov v. United States,* 552 F.2d 159, 162 (6th Cir.1977), *rev'd on other grounds,* 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978), *aff'd,* 895 F.2d 1123 (1990)). Further, due regard is to be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. *Id.* Finally, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case . . . for necessary factual determinations." *Id.*

■ A district court reviews a bankruptcy court's conclusions of law de novo. *Baker & Getty,* 106 F.3d at 1259. Questions of statutory interpretation are also reviewed de novo. *West v. AK Steel Corp.,* 484 F.3d 395, 402 (6th Cir.2007).

■ De novo review requires the district court to review questions of law independent of the bankruptcy court's determination. *In re Eubanks,* 219 B.R. 468, 469 (6th Cir. BAP 1998). Further, whether a lower court failed to consider or accord proper weight or significance to relevant evidence is a question of law reviewed de novo. *Indmar,* 444 F.3d at 778 (citing *Flying J, Inc. v. Comdata Network, Inc.,* 405 F.3d 821, 829 (10th Cir.2005)). Finally, if the bankruptcy court's conclusion raises a mixed question of law and fact, the district court breaks the question into its constituent parts and applies the appropriate standard of review for each. *In re Batie,* 995 F.2d 85, 88 (6th Cir.1993).

■ The appeal in this case may result in one or a combination of several outcomes. "On an appeal, the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *Caldwell,* 851 at 857 (6th Cir. 1988) (quoting B.R. 8013). Having set forth the standard of review, the analysis turns to the issues raised by the Appellant.

## WHETHER THE BANKRUPTCY COURT ERRED WHEN IT REFUSED TO CONSIDER EVIDENCE ON AN ELEMENT OF PROOF IN THE CASE: WHETHER THE DEBTORS HAD "PRIMARILY CONSUMER DEBTS" UNDER 11 U.S.C. § 707(b)

The UST argues that the Bankruptcy Court made two errors when it refused to consider the UST's evidence that the Debtors' valuation of Don Wright Realty's claim was incorrect. First, according to the UST, the Bankruptcy Court erroneously interpreted section 707(b) as requiring presumptive reliance upon a debtor's bankruptcy schedules as of the date the petition was filed. Second, the Bankruptcy Court erroneously refused to consider evidence on a contested question of fact. The Debtors respond that the Bankruptcy Court was correct when it held that the Debtors properly listed the full amount owed on their commercial lease in their schedules.

### Interpretation of Section 707(b)

■ After notice and a hearing, a Chapter 7 debtor's case may be dismissed

if the debtor's debts are primarily consumer debts and the case would constitute an abuse. 11 U.S.C. § 707(b)(1). Further, a debtor is considered to have primarily consumer debts when more than one half of the dollar amount of the debt owed is consumer in nature. *In re Martens*, 171 B.R. 43, 45 (Bankr.N.D.Ohio 1994).

In this case, the Debtors seek relief under Chapter 7. Further, based upon the Debtors' application, their debts are primarily consumer debts. However, if the amount on Debtors' application related to the Debtor's commercial lease with Don Wright Realty were calculated based upon the limit provided by 11 U.S.C. § 502(b), the Debtors would have primarily consumer debts and the court would need to consider whether the case constituted an abuse.

The Bankruptcy Court did not specifically determine whether this case would constitute an abuse nor is this an issue being appealed. It did, however, determine that the abuse provisions of 11 U.S.C. § 707(b) do not apply because the Debtors properly listed the full amount owed on the Don Wright Realty lease in their schedules.

The Bankruptcy Court also, in response to the Trustee's Motion, determined that the Debtors did not exhibit the bad faith required for dismissal pursuant to 11 U.S.C. § 707(a). The decision that the Debtors did not exhibit the bad faith required for dismissal pursuant to 707(a) is not being appealed by the UST.

Whether or not the Court should have considered abuse pursuant to 707(b) turns on whether the debt is primarily consumer or primarily business debts. The answer to this question turns on how the lease debt to Don Wright Realty is calculated. If it is taken as the amount listed on the Debtors' schedules, their debt is primarily business. If it is the amount calculated as argued by the UST, their debt is primarily consumer.

The Bankruptcy Court says it may rely upon the schedules filed by the Debtors for the amount of the lease debt. The Trustee argues that the lease debt is to be calculated using the provisions of 11 U.S.C. § 502(b).

There is little caselaw addressing this issue and the Sixth Circuit has not addressed it directly. However, the Sixth Circuit has addressed the issue in the context of a Chapter 13 bankruptcy. In *In re Pearson*, the Sixth Circuit held that, when making threshold eligibility determinations such as calculating a debtor's debt levels to determine whether they exceed the limits for a Chapter 13 bankruptcy, a court should rely primarily upon the debtor's schedules checking only to see if the schedules were filed in good faith. 773 F.2d 751, 756 (6th Cir.1985). This conclusion is based upon: the conclusion that the applicable regulation, 11 U.S.C. § 109(e), provides that the eligibility determination is based on the date of filing and says nothing about computing eligibility after a hearing on the merits of the claims; the conclusion that evidence must be taken to determine the amount of the claim indicates that, until then, the claim was unliquidated; and the conclusion that the Bankruptcy Code contemplates that a Chapter 13 plan be adopted and implemented in a short period of time. *Id.* In reaching this conclusion, the Sixth Circuit also cited the need to minimize litigation over threshold inquiries and maximize efficiency. *Id.* at 757.

A debtor's ratio of business to consumer debts to evaluate the applicability of 707(b) is a similar threshold inquiry to that being made in *In re Pearson*. Further, the Bankruptcy Code imposes short time limits for filing 707(b) motions just as the Bankruptcy Code contemplates that a

Chapter 13 plan be adopted and implemented in a short period of time. Also, the policy reasons for keeping the focus on the debtor's scheduled debts to minimize litigation over threshold inquiries and maximize efficiency are applicable.

The UST argues that section 109(e) is irrelevant because questions of how eligibility are resolved under section 109(e) should not inform a motion to dismiss under section 707(b). However, the Bankruptcy Court did not determine that section 109(e) was directly on point, but, in the absence of caselaw directly on point, correctly determined that caselaw interpreting section 109(e) was relevant. In *Pearson*, the Sixth Circuit was addressing threshold questions regarding Chapter 13 bankruptcy proceedings and here the Bankruptcy Court was addressing a threshold question regarding a Chapter 7 proceeding.

The UST also argues that, even if section 109(e) were considered persuasive, the Bankruptcy Court fundamentally misunderstood the Sixth Circuit's section 109(e) jurisprudence in that the Bankruptcy Court confused how, for the purpose of establishing jurisdiction, a good faith statement relieves the plaintiff from the initial burden of persuasion with relieving the plaintiff from the entire burden of proof. For this argument, the UST relies on *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir.2009) for the proposition that an opposing party may rebut the presumed amount in controversy stated in a complaint and the plaintiff may be required to prove the amount. However, *Charvat* is not helpful in this case. In *Charvat*, the Sixth Circuit is addressing the amount in controversy requirement for diversity jurisdiction and not an amount stated in a debtor's bankruptcy schedules.

■ A second reason for accepting the amount scheduled for the lease debt in-stead of using 11 U.S.C. § 502(b)(6) is that section 502(b)(6) reveals that its application is not automatic at the time the petition is filed. Specifically, section 502(b)(6) applies only after a claim is filed and there is an objection thereto. Section 502(b)(6) discusses how the value of a claim regarding the lease of real property is addressed after there is an objection to the claim. In this case, the issue surrounds the schedules filed and not a claim or an objection to a claim. *See In re Blair*, 2007 Bankr.LEXIS 4242 at *22 (Bankr.S.D.Ohio Dec. 13, 2007).

The UST argues that the purpose of section 707(b) is to discern the truth of a debtor's circumstances. This is true. Further, the circumstances to be discerned are whether granting a debtor with primarily consumer debts Chapter 7 relief would be an abuse of Chapter 7 provisions. To become involved in section 707(b), the debtor must first have primarily consumer debts. In this case, the Bankruptcy Court correctly determined that the debtor did not have primarily consumer debts.

The UST next argues that a bankruptcy court is required to apply ordinary trial rules and procedures in a contested matter. From this he concludes that the prosecution of a motion to dismiss under section 707(b) is a contested matter so the Bankruptcy Court should have taken evidence on whether the debts in this case were primarily consumer or primarily business debts. However, the "contest" regarding 707(b) is whether a debtor with primarily consumer debts has abused the provisions of Chapter 7 and not whether a debtor has primarily consumer debts as opposed to primarily business debts.

The UST next argues that the Bankruptcy Court's interpretation of section 707(b) cannot be reconciled with the text, legislative history and statutory context. First, as the UST asserts, the plain lan-

guage of section 707(b) only requires that an individual debtor have primarily consumer debts in order to be subject to dismissal for abuse and nothing in section 707(b) suggests that the debtor's good or bad faith should control the determination of whether the debts in question are primarily consumer or business in nature. In other words, the plain language of section 707(b) applies to debtors with primarily consumer debts. Nothing is said about a determination as to whether the debtor has primarily consumer or business debts.

Second, the UST argues that the primary purpose of the current version of section 707(b) is to identify and prevent abusive conduct. While this may be true, a reading of section 707(b) reveals that it is intended to prevent abusive conduct by debtors with primarily consumer debt and nothing is said about debtors with primarily business debt.

 Section 707(b) applies to debtors with primarily consumer debt and says nothing about how to determine if a debtor has primarily consumer debt. Although the Sixth Circuit and the Supreme Court have not spoken directly on the issue, the Sixth Circuit has spoken on a very similar issue and a reading of section 502(b)(6) reveals that its application is not automatic at the time the petition is filed. Therefore, the Bankruptcy Court correctly determined that it must use the amount listed on the Debtors' schedules to determine whether the debtor has primarily consumer or business debts for purposes of applying section 707(b). Further, the Bankruptcy Court was correct to determine that, since the Debtors had primarily business debt, the abuse provisions of section 707(b) do not apply.

### Consideration of Evidence On a Contested Matter

 As the UST correctly states, under Federal Rule of Bankruptcy Procedure 9014, a bankruptcy court must make findings of fact and conclusions of law before entering an order on a contested matter that has the status of a judgment. *See In re Khachikyan,* 335 B.R. 121, 126–27 (9th Cir. BAP 2005) (F.R.B.P. 1017(f) prescribes the "contested matter" procedure of Rule 9014 for section 707(b) motions). On this basis, according to the UST, the Bankruptcy Court should have considered the UST's evidence regarding whether the debt was primarily consumer or business.

However, Rule 9014 applies to contested matters and, as set forth more fully above, whether a debtor has primarily consumer or business debt is not a contested matter for purposes of section 707(b). The purpose of 707(b) is to determine whether a Chapter 7 debtor with primarily consumer debts is abusing the provisions of Chapter 7. In this case the Bankruptcy Court correctly determined that the Debtors did not have primarily consumer debt and thus did not reach the issue of whether the Debtors abused the provisions of Chapter 7.

### WHETHER THE BANKRUPTCY COURT ERRED WHEN IT HELD THAT THE MEANING OF THE TERM "DEBT" UNDER 11 U.S.C. § 707(b) INCLUDED AMOUNTS THAT A CREDITOR MAY NOT ASSERT AGAINST THE DEBTOR DUE TO THE STATUTORY LIMITATION ON DAMAGES FOR LOST FUTURE RENT UNDER 11 U.S.C. § 502(b)(6)

In its second assignment of error, the UST argues that the Bankruptcy Court erred when it held that the value of a debt included amounts that are unrecoverable under 11 U.S.C. § 502(b)(6) when determining whether the Debtors had primarily consumer debts. The Debtors respond

that the Bankruptcy Court was justified in refusing to consider evidence that purported to show that the Debtors business debts are less than the amount scheduled in their bankruptcy petition.

■■■ Section 502(b)(6) is titled "Allowance of claims or interests." It provides a means to calculate a cap on the value of a claim for damages resulting from the termination of a lease of real property. 11 U.S.C. § 502(b)(6). The purpose of the cap is to ensure that a landlord is properly compensated for damages due to a breach of a lease yet precluded from receiving a distribution for future losses so large as to prevent other general unsecured creditors from recovering a reasonable dividend from the estate. *In re Brown*, 398 B.R. 215, 219 (Bankr.N.D.Ohio 2008).

■■■ Section 502(b) is triggered, according to its express language, only when an objection to a claim has been filed. 11 U.S.C. § 502(b). This section is not applicable unless a party objects to a creditor's proof of claim. Because the section 502(b)(6) cap is only activated by optional and unpredictable post-petition bankruptcy events, the cap is not appropriately applied to threshold inquiries that are focused on the initial schedules. *See In re Blair*, 2007 Bankr.LEXIS at 822 (section 502(b)(6) was not designed to determine eligibility for bankruptcy relief, but, instead sets a limit on certain claims for purposes of allowance and distribution from the bankruptcy estate).

The UST first argues that the value of a debt based upon a claim for lost future rent is determined by the net present value of the debtor's liability on the claim. However, while this may be true, the issue here is not the debtor's liability on Don Wright Realty's claim against the bankruptcy estate. The issue here is whether the Debtors have primarily consumer or

business debts for purposes of a motion to dismiss brought pursuant to section 707(b).

The UST next argues that the method of determining the value of a contingent claim was applied to resolve the question of whether a debtor has primarily consumer debts under section 707(b) in *In re Cox*, No. 08–61964, 2009 WL 1586674 (Bankr. N.D.Ohio Feb.13, 2009). In *Cox*, the bankruptcy court was addressing the value of the debt which the Debtors could claim when ascertaining the applicability of section 707(b)(2). The debtor had listed the value of a loan guarantee as a business debt and the court was determining if the loan guarantee was a business debt at all, and if so, to what extent it should be counted. The bankruptcy court determined that the loan guarantee was a debt and valued the debt using the provisions of section 502(c)(1).

However, *Cox* is not persuasive. The debtor in *Cox* was not claiming debts owed due to the breach of a lease, rather, he was claiming a personally guaranteed business loan on a viable business. The debtor in *Cox* tried to claim a loan guarantee which he had executed on behalf of his company as a business debt despite the fact that the company was current on the loan and no evidence was produced to show that the company would not be able to continue to service the loan.

The UST next argues that the net present value of a debtor's liability for damages based on lost future rent must be calculated in consideration of section 502(b)(6)'s limitation on damages. For this argument, the UST relies upon *In re Vause* wherein the Sixth Circuit said that, by enacting section 502(b)(6)'s limitation, Congress intended to compensate landlords for their actual damages while placing a limit on a claim, based upon a long term lease, so large as to displace other creditor's claims. 886 F.2d 794,

801–03 (6th Cir.1989). However, the UST's reliance upon *Vause* here is misplaced because, in *Vause*, the Sixth Circuit was applying 502(b)(6) to a claim, as it was intended to be applied, and not to a debtor's petition to determine whether the debts were primarily consumer or business.

The UST also argues that the amount of debt is determined by the debtor's liability on a claim. *See* 11 U.S.C. § 101(5) (the term claim means a right to payment or the right to an equitable remedy for breach of performance); 11 U.S.C. § 101(12) (the term "debt" means liability on a claim). Therefore, according to the UST, the bankruptcy court needs to estimate the value of the claim and should use 502(b)(6) to do so. However, this argument too is without merit. Section 502(b)(6) does not determine eligibility but limits the amount of certain claims. Further, section 502(b)(6) does not mention the term "debt." Thus, while in many situations a debt and a claim may be the same amount of money, these two terms do not necessarily mean the same amount of money when applied to sections 707(b) and 502(b)(6).

Finally, the UST argues that relevant authority contradicts the Bankruptcy Court's reading of section 502(b)(6). *Vause* is the first authority cited by the UST. 886 F.2d at 800. However, the Sixth Circuit in *Vause* was applying section 502(b)(6) to a claim, as it should be, and not to a debtor's schedules to determine whether the debts are primarily consumer or business.

The second authority cited by the UST is the "adjudicatory structure and evidentiary function of section 502 as a whole." However, from a plain reading including the title, it is clear that section 502 applies to the allowance of claims and not to how a debtor's schedules are to be used to decide whether the debts listed are primarily consumer or business.

The third authority cited by the UST is section 502(b) itself and *Travelers Casualty and Surety Company of America v. Pacific Gas and Electric Co.*, 549 U.S. 443, 449, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007). However, in *Travelers*, the Supreme Court refers to section 502 when addressing whether a claim for attorneys' fees could be filed and does not address how to decide whether debts are primarily consumer or business.

The fourth authority cited by the UST is *In re Oakes*, No. 92–3935, 1993 WL 339725 (6th Cir. Sep. 3, 1993). The UST, referring to *Oakes*, argues that, even if section 502(b)(6) is only activated by post-petition bankruptcy events (such as a challenge to a claim), "it would make no sense to require the court to ignore the obvious implications of the section 502(b)(6) limitations within the context of an exercise that is intended to establish a present value for claims that may or may not be fully activated by future events." In *Oakes*, the Sixth Circuit was addressing debtors who had listed obligations in their schedules on which they were not personally liable and guarantees that were more than adequately secured. The court was considering these obligations with regard to whether or not the debtor was insolvent. However, insolvency is not an issue in this case. Whether debts listed on the schedules are primarily consumer or business is the issue.

The fifth authority cited by the UST is really an argument that the Bankruptcy Court, despite recognizing the case law cited above, failed to establish a coherent basis for treating section 502(b)(6) differently. The Bankruptcy Court failed to establish a coherent basis, according to the UST, because the Bankruptcy Court could only provide one case in support of its position, that being *Blair*. And *Blair*, ac-

cording to the UST is a "practically unreasoned judgment."

This argument is not persuasive for at least three reasons. First, the Bankruptcy Court has established a coherent basis for its treatment of 502(b)(6). The Bankruptcy Court established a coherent basis as to why it may rely upon the schedules filed by the Debtors for the amount of the lease debt and for why section 502(b)(6) applies capping the amount of claims resulting from the termination of a lease of real property. Second, the UST has failed to provide caselaw that is on point and contrary to the Bankruptcy Court's coherent basis for treatment. Third, *Blair* is well-reasoned regarding the question of law that the *Blair* court was addressing.

### CONCLUSION

The UST would like for the Bankruptcy Code and related law to make clear something that it does not make clear and the UST does not agree with the Bankruptcy Court's clarification of that area of the law. However, after a de novo review of the record in this case, of the law and of the applicable statutes, the Debtors did not have primarily consumer debts and section 502(b)(6) does not apply to determine the amount of debt considered to determine whether the debts listed on the schedules are primarily consumer or business. Further, there is no clear error in the Bankruptcy Court's findings of facts.

The decision of the Bankruptcy Court in this matter is AFFIRMED. Finally, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED.**