In re Matthew J. HENNEY, Debtor.

Matthew Henney, Defendant–Appellant,

v.

Timothy Rumfield, Plaintiff–Appellee.

No. 1:07–cv–14.

United States District Court,
W.D. Michigan,
Southern Division.

April 25, 2011.

Andrew J. Gerdes, Andrew J. Gerdes PLC, East Lansing, MI, for Debtor and Defendant–Appellant.

Peter A. Teholiz, Hubbard Fox Thomas White & Bengtson PC, Lansing, MI, for Plaintiff–Appellee.

## OPINION and ORDER

**Vacating U.S. Bankruptcy Court's December 11, 2006 Ruling on § 523(a)(9) Nondischargeability; Vacating the Grant of Summary Judgment to Plaintiff/Judgment–Creditor Rumfield; Vacating the Denial of Summary Judgment for Defendant/Judgment–Debtor Henney**

**Remanding for Determination of Whether Henney was Intoxicated at Time of Accident as Defined by Michigan Compiled Laws § 257.625(1) (2001)**

PAUL L. MALONEY, Chief Judge.

Kelly Fuels's convenience store sold beer to defendant/debtor Matthew Henney ("Henney") on June 15, 2001, and some hours later his truck rear-ended a truck in which plaintiff/creditor Timothy Rumfield's two sons, Jeffrey Rumfield and Daniel Rumfield, were riding, killing one and permanently injuring the other. Rumfield secured a jury verdict against Henney in the first state-court trial, and secured a jury verdict against Kelly Fuels, whose convenience store sold beer to Henney some hours before the accident, in a second state-court trial to which Henney was not a party. As discussed in greater detail below, the jury found in each case that Henney was partially at fault and the Rumfields were partially at fault for the accident. Henney petitioned for bankruptcy protection, and the Rumfields contended that his judgment debt to them is nondischargeable pursuant to 11 U.S.C. § 523(a)(9), which requires a showing that the debt resulted from death or injury caused by the debtor's operation of a motor vehicle which is illegal "because the debtor was intoxicated" from alcohol and/or illegal-drug use. The bankruptcy court granted summary judgment to the Rumfields on that issue, and Henney appealed to this court.

For the reasons that follow, the court will vacate the bankruptcy court's order because the grounds on which it relied are invalid. First, the court holds that the bankruptcy court erred in determining that the jury verdict of dram-shop liability in *Rumfield v. Kelly Fuels*—where Henney was not a party—established with preclusive effect that Henney was intoxicated. Second, the court holds that the bankruptcy erred in determining that Henney's violation of a Michigan statute prohibiting people under 21 years old from operating a motor vehicle if they have any bodily alcohol content, necessarily established that Henney was intoxicated. However, it would be improper for this court, sitting as an appellate court, to decide whether Henney was intoxicated for this purpose. The case will be remanded to the bankruptcy court for a determination of whether Henney was intoxicated, whether on summary judgment or otherwise.

## BACKGROUND: BEFORE THE AUTOMOBILE ACCIDENT

On the evening of June 15, 2001, nineteen-year-old Matthew Henney ("Henney")

took his girlfriend out to dinner; on the way back, he stopped and purchased 18 cans of cold Miller Lite beer from a convenience store operated by Kelly Fuels, Inc., doing business as Woodland Express Mart ("Kelly Fuels"). *See Rumfield v. Henney & Kelly Fuels, Inc.*, No. 260540, 2006 WL 2739331, *1, 2006 Mich.App. Lexis 2805 (Mich.App. Sept. 26, 2006, amended Oct. 4, 2006) (per curiam) (J. Sawyer for the Court, with J. Schuette concurring at *9 and P.J. Davis dissenting at *9–14); *see also* Trial Transcript Volume V, available as Record on Appeal ("ROA") 16 Exhibit ("Ex") A ("Tr 5")—Testimony of Rebecca Geldersma; Tr 2 (ROA16 Ex E) Testimony of Matthew Henney at 123–126. The store clerk testified that Henney showed her identification which indicated that he was over 21 years old, the legal minimum to buy alcohol in the State of Michigan. Henney testified that he "drank a few beers" after that but was not intoxicated. *Rumfield*, 2006 WL 2739331 at *1.

Sometime shortly after 11:00 p.m., 17–year–old Daniel Rumfield and 23–year–old Jeffrey Rumfield arrived at a party hosted by their friend Jeremy Liptak, who testified that he saw Jeffrey drink two to three beers but did not see Daniel drinking any. *See* Tr 7 at 45–Testimony of Jeremy Liptak. The two Rumfield boys left the party at about 1:00 a.m., by then June 16, 2001, and went to a party at Alan Brodbeck's pond. *See* Tr 7 at 45–Liptak Testimony and Tr 8 at 85 & 91 (ROA 16 Ex C)— Testimony of Christopher Alderink. Present when the two Rumfield boys arrived were Christopher Alderink and Matt Henney. Alderink could tell that Daniel Rumfield had consumed alcohol, and he did not see Henney drink any alcohol, but he left shortly after the Rumfields arrived, *see* Tr 8 at 89 & 91 (ROA 16 Ex C)—Alderink at 93–95. The pond's owner, Alan Brodbeck, went to sleep in the cabin near the pond and did not see the Rumfields that night, *see* Tr 7 (ROA 16 Ex D)—Testimony of Alan Brodbeck at 265.

Henney claimed that he did not drink anything before going to Brodbeck's pond, and that he drank only two beers that evening beginning around 11:45 p.m., *see* Tr 2 (ROA 16 Ex E–Henney) at 117 and 188–191. With Brodbeck asleep and Alderink leaving shortly after the Rumfields arrived, only Henney and the two Rumfield boys remained at the pond. Because Jeff Rumfield did not testify due to his brain injuries and loss of memory of the accident and the events preceding it (Tr 6 at 58), and because Daniel Rumfield died in the accident, only Henney provided trial testimony regarding events after Alderink's departure, *see* Henney's Opening Brief on Appeal filed March 5, 2007 (Doc 19) ("Henney Br") at 2. Henney testified that Jeff and Daniel Rumfield each had up to three beers at the pond, Tr 2 ROA 16 Ex E at 162.

Henney and the Rumfields decided to leave the pond at about 3:30 a.m., *see* Tr 2 (ROA Ex E–Henney Direct) at 165. Jeff Rumfield told Henney that he was going to take his brother to get his brother Daniel's truck, which he had left at the Liptak party, and the Rumfield brothers drove away in Jeff's pick-up truck, *see* Tr 2 (ROA Ex E–Henney Direct) at 163–164. Henney followed in his pick-up truck, and both trucks headed onto Michigan Route 43 ("M–43") East, *see id.* at 169. Henney expected the Rumfields to angle to the south on Michigan Route 50 ("M–50") to return to Liptak's house to get Daniel's truck as stated, and he continued on M–43 East towards his home, *see* Tr 7 (ROA 16 Ex F–Henney Rebuttal) at 332.

## BACKGROUND: THE AUTOMOBILE ACCIDENT

*The Speed of the Vehicles and the Blood Alcohol Level of the Drivers.* Shortly

thereafter, Henney's truck passed through a fog bank and rear-ended the Rumfields' truck, killing passenger Daniel and seriously injuring and permanently incapacitating driver Jeffrey, *see Rumfield,* 2006 WL 2739331 at *1 and Tr 7 (ROA 16 Ex F–Henney Rebuttal) at 335–337. The speed limit on the accident site was 55 mph. At the time of the accident, Henney was driving at a speed of 70 to 93 miles per hour; Henney maintained that he was driving 70 mph, while there was some evidence that he was actually driving faster than *ninety* mph, *see Rumfield,* 2006 WL 2739331 at *9 with n. 1 (P.J. Davis, dissenting on other grounds). As the Michigan Court of Appeals explains,

> * * * [Henney] left the scene of the accident and went to a friend's house nearby, where he stayed for a few hours. By the time Henney was taken to the hospital and his blood-alcohol level tested, no alcohol was detected in his system. Plaintiff did offer the opinion of an expert toxicologist who opined that, based upon the consumption of five or six beers over the time frame indicated, Henney's blood-alcohol level would have been in the range of 0.047 g/dl [grams per deciliter] at the time of the accident.

> While [Rumfield] attributes the accident to Henney's intoxication, Henney attributes it to the Rumfield vehicle being driven without its light on and, due to foggy conditions, Henney was unable to see the vehicle in time to stop.

*Rumfield,* 2006 WL 2739331 at *1; *see also* Tr 4 (ROA 16 Ex M–Testimony of Plaintiff Rumfield's Expert Toxicologist Daniel J. Brown) at 134(BAC). The driver of the vehicle which Henney rear-ended, Jeffrey Rumfield, had a blood alcohol content of 0.07 at the time of the accident, *see* ROA 16 Ex N–Laboratory Test Results for Jeffrey Rumfield.

A police officer estimated that the Rumfields were traveling at 58 mph at the moment of impact, while defendant Henney's expert estimated the Rumfields' speed at only 40 mph, substantially below the speed limit, *see* Tr 3 (ROA 16 Ex G–Testimony of Sergeant Rodney Sadler) at 59 and Tr 8 (ROA 16 Ex H–Defense Accident Reconstruction Expert David J. Shepardson) at 154. Henney states that both sides' experts agree that his truck was traveling 30 mph faster than the Rumfields' truck ahead of him, *see* Henney Br (citing ROA 16 Ex G–Sgt. Sadler at 60 and ROA 16 Ex H–Defense Expert Shepardson at 154).

*Direct and Circumstantial Evidence that the Rumfield Truck May Have Had Its Lights Off.* Henney claimed that the reason he collided with the Rumfield truck is that the Rumfields had turned their lights off, *see* Tr 7 (ROA 16 Ex F–Henney Rebuttal) at 336–337. In support of this claim, he emphasized that the Michigan State Police Crime Laboratory tested the Rumfield truck's lights to see whether their tungsten filaments broke in a hot, ductile "stretched out" manner (consistent with being illuminated) or in a cold, brittle manner (consistent with not being illuminated) and found that six of the lights were off, and none were on, at the time of impact. *See* Tr 8 (ROA 16 Ex L—Testimony of Michigan State Police Crime Lab expert Christopher Bommarito) at 17 and 41. Henney also proffers the testimony of Rumfield's father that his son was a skilled mechanic who was very proud of his truck and meticulously maintained it, such that "if [Jeff] knew there were lights on it he's going to change them" and he would be "surprised" if Jeff had had six burnt-out bulbs on the vehicle at the time of the accident, *see* Tr 3 (ROA Ex 16 Ex I–Testimony of Timothy Rumfield) at 199, 201 and 202.

On the other hand, as Rumfield notes (P's Opp at 17 n. 6), one Karen Orta testified that she could see the headlights from the Rumfield vehicle shining after the accident, Tr 2 at 67–68, and there was evidence that the headlight switch in the Rumfields' truck was in the "on" position at that time, Tr 3 at 28.

Less directly, Henney alleges that he had driven with Jeff Rumfield on two or three occasions when Jeff had turned off the truck's lights while driving in the dark—characterizing the practice as "just a game" that Jeff played—including one occasion about two months before the accident, *see* Tr (ROA 16 Ex E–Henney Direct) at 221 and Tr (ROA 16 Ex F—Henney Rebuttal) at 337–339. "And that night I remember Jeff shutting his lights off as we were, would come to the top of them [sic] hills.... Then he'd turn them right back on real quick", testified Henney, and Jeff allegedly did so "two or three times that [earlier] night." *Id.* Henney also points to trial testimony from the Rumfield parents that Jeffrey had a habit of turning his truck lights off sometimes while driving at night. Mr. Rumfield recalled that when his son Jeff was about fifteen years old, while he "was following somebody else down the road", "they shut the lights off and he did the same thing", causing the vehicle to go into a ditch. *See* Tr 3 (ROA 16 Ex I–Testimony of Timothy Rumfield) at 197. Similarly, the mother of the Rumfield boys recalled an incident when she was a passenger in a vehicle driven by her son Jeff when Jeff "briefly turned off his headlights"; "[h]e was following a friend and ... it was dark out ... and [w]e left the road." *See* Tr 4 (ROA 16 Ex J–Testimony of Julie Ann Thorn) at 48–49.

In an attempt to render it plausible that Rumfield indeed unwisely (and arguably illegally and negligently) had his lights off at the time of the accident, Henney adduces expert Brown's testimony that someone with Rumfield's characteristics—a 23–year–old man with a BAC of 0.07 and not known to be an alcohol abuser or experienced drinker—would be generally expected to have decreased coordination, decreased vision, decreased reaction time, impaired risk assessment ability, and "probably" a greater likelihood of doing "stupid things", ROA 16 Ex G (Testimony of Brown) at 135–36.

Henney effectively reasons that in turn, if Rumfield had his truck lights turned off when Henney's vehicle approached from the rear, a non-negligent, non-intoxicated driver in Henney's position would have been unable to avoid a collision through no fault of his own. In this vein, Henney presents the testimony of Sergeant Sadler, who investigated the accident scene from 5:00 a.m. until 11:00 a.m. or noon, that a vehicle being driven on a State highway in an unlit area with its lights off "would be a dangerous and a hazardous condition"; that if Rumfield had his lights off at the time of the accident, it would have reduced Henney's ability to perceive and react to Rumfield's truck in the roadway, *see* ROA 16 Ex G at 129 and 80–81.

Concretely, Henney presents evidence and opinion tending to show that even if he were not intoxicated—as he maintains he was not—he would have been unable to avoid the collision. Specifically, accident-reconstruction expert Shepardson testified that low-beam headlights typically illuminate 100 to 200 feet ahead in the sense that a driver can discern what is in front of him, *see* ROA 16 Ex H (Testimony of expert Shepardson) at 181. If Henney was driving 55 mph (the speed limit on M–43 at the accident site), that would be 81 feet per second; if he were driving 70 mph, that would be 116 feet per second, *id.* (ROA 16 Ex H) at 178. Combining these

figures with the expert's 100–to 200–foot headlight view given by that same expert, this court estimates that a driver in Henney's position, even if not intoxicated, would have had less than two and a half seconds to react, under any assumptions consistent with those figures, after seeing Rumfield's truck ahead of him. This is potentially significant, because expert Richardson opined, without apparent contradiction in any portion of the record identified by the parties, that if a driver under these circumstances were startled by the presence of an unexpected, unlit vehicle, he would need "much more" than 2.5 seconds to react, id. (ROA 16 Ex H) at 177. Moreover, expert Richardson testified that anyone driving at a speed of 70 mph or greater in the darkness is "over-driving" his headlights, id. at 245–46, i.e., without regard to intoxication.

*After the Automobile Accident.* Henney could not re-start his truck after the accident, so he could not use the two-way radio in the truck, and his cellular telephone was out of power; recalling that Alan Brodbeck, whom he and the Rumfields had visited earlier, had a cell phone, he ran to Alan Brodbeck's house, see ROA 16 Ex E (Henney direct testimony) at 198 and 205–206, and Ex F at 319–320. Defendant Henney alleges that he went to Brodbeck's house "to get help", ROA 16 Ex E at 192–93, while plaintiff Rumfield alleges that Henney "fled the scene" and was found "hiding out" at Brodbeck's house, see P's Opp at 2 (citing Tr 2 at 202–207). Henney woke Brodbeck up by banging on the door, and told him that he "was really scared because he, you know, he said that there was an accident. He said that he ran into the back of the Rumfield boys' truck" and that a car passing by the accident scene had called 911. See ROA 16 Ex E (Henney Testimony) at 207 and Ex E (Brodbeck Testimony) at 289. In a statement given to police a few days after the accident in June 2001, Brodbeck recalled that when Henney arrived at his house, "[h]e seemed pretty normal to me", not intoxicated, was not stumbling, and did not have a beer odor on his breath; the only way Brodbeck knew Henney had been drinking is that Henney told him so. See ROA 16 Ex O (Trial Ex A) at 36–37 and 41. Likewise, on cross-examination at trial, Brodbeck testified that Henney did not do anything on the night/morning of the accident to make him think he was intoxicated, see ROA 16 Ex D at 298.

Henney waited at Brodbeck's cabin until his mother picked him up and brought him home, where he was met by Eaton County Sheriff's Sergeant Jeffrey Campbell and Detective Daniel G. Preuter. Sergeant Campbell, who questioned Henney at his parents' house and rode with him in the ambulance from there to the hospital for examination and a blood alcohol test, testified that he did not smell alcohol on Henney and that he observed "nothing" about Henney at any time to suggest that he had been "impaired in any way by alcohol[.]" Tr 1 (ROA 16 Ex P–Sgt. Campbell testimony) at 366–67. Similarly, Detective Preuter, who spoke with and observed Henney at his parents' house specifically to determine whether was under the influence of alcohol and what happened to cause the accident, testified that Henney did not smell of alcohol, did not slur his words, was not spilling anything, was not red-faced, did not have rumpled or soiled or torn clothes, and did not "give . . . any indication that he was conducting himself under some influence of alcohol"; overall, Detective Preuter knew that the officers at the scene would have had blood alcohol testing devices with them but he felt no need to obtain one. See Tr 2 (ROA 16 Ex Q—Testimony of Sgt. Preuter) at 21 and 56–57.

At 8:45 a.m.—about five hours and 10 minutes after the accident—a blood test at Pennock Hospital yielded a zero BAC for Henney, *see* ROA 16 Ex R (Laboratory Test Results for Henney), and he was released. **Henney was never charged with any offense directly entailing the consumption of alcohol.** Rather, state prosecutors charged Henney with manslaughter with a motor vehicle, felonious driving, failure to stop at the scene of a serious personal-injury accident, and "being in possession of or purchasing alcohol while a minor" in violation of MICH. COMP. LAWS § 436.1703(1), *see* ROA 16 Ex E at 244. Henney pled guilty to negligent homicide and failing to remaining at the scene of a serious personal-injury accident, *id.* at 217–220, and it appears that the other charges were dropped. Plaintiff/creditor alleges, without citation to the record but without contradiction from Henney, that the sentence included a requirement that Henney pay more than $1.7 million in restitution, *see* P's Opp at 2 n. 1.

## PROCEEDINGS IN MICHIGAN STATE COURT

Timothy Rumfield, the representative of passenger Daniel Rumfield's estate and the co-guardian of permanently injured driver Jeffrey Rumfield, sued Henney and Kelly Fuels for violating Michigan's Liquor Control Act of 1998 section 801 as amended, MICH. COMP. LAWS § 436.1801, sometimes colloquially known as the Dram Shop Act. In September 2004, an eight-day trial was held in Eaton County Circuit Court.

*Lay and Expert Testimony Regarding Henney's Alcohol Consumption and BAC.* Henney testified that he drank only two beers all night and finished drinking by "twelve-thirty, one-ish", which both sides' toxicologists agreed would have given him a BAC of zero at the time of the accident, *see* ROA 16 Ex E (Henney) at 244 and Ex M (plaintiff Rumfield's toxicologist Brown) at 150 and Ex S (defendant Henney's toxicologist McCoy) at 185. In contrast, a police report recorded Henney telling police that he had consumed five beers that night before the accident, which Henney maintained resulted from the officer mishearing him say "a few", *see* ROA 16 Ex F at 324 and 355.[1] Specifically, Brodbeck told police that when Henney rushed in and told him about the accident, he said "I've had a couple. I ain't drunk but I've had a couple." *See* ROA 16 Ex P at 330. On the other hand, Rumfield emphasizes that Henney testified that when he bought the 12–pack and 6–pack of beer, he was

---

1. The bankruptcy court characterized as "clearly a self-serving statement" Henney's statement attempting to refute other witnesses' testimony about the amount of alcohol he consumed, *see* ROA 27 at 4. But "[a] court may not disregard evidence merely because it serves the interests of the party introducing it," *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir.2010) (J. Griffin, joined by USCIT J. Barzilay, with J. Guy dissenting o.g.) (citing *Niemi v. NHK Spring Co.*, 543 F.3d 294, 300 (6th Cir.2008) ("[Plaintiff's] affidavit, albeit arguably self-serving, is not 'no evidence.' ") and *Rushing v. Kansas City So. Ry. Co.*, 185 F.3d 496, 513 (5th Cir.1999) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient."), *superseded o.g. as* recognized by *Mathis v. Exxon Corp.* 302 F.3d 448 (5th Cir.2002)).

While a factfinder could reasonably conclude that Henney's two-beer claim was a self-serving *post hoc* falsehood, that was not an issue which the bankruptcy court, let alone this court, may resolve on summary judgment. *See Coburn v. Rockwell Automation, Inc.*, 238 Fed.Appx. 112, 126 (6th Cir.2007) (Merritt, *Griffin*, E.D. Mich. D.J. Lawson) ("The jury could conclude that Lalone's explanation for Rockwell's failure to RIF any of the 15 temporary employees instead of the 55–year–old Coburn was a self-serving *post hoc* falsehood. This boils down to a credibility determination, the very type of determination that courts may not resolve on summary judgment.").

buying beer "for three people" and he agreed that he had been "thinking six a piece", Tr 2 at 124, arguably making it more plausible that Henney ended up drinking 5–6 beers.

When asked to assume that Henney had consumed five beers and had a zero BAC at 8:45 a.m. (the latter being undisputed), plaintiff Rumfield's expert toxicologist Brown opined that the *highest* Henney's BAC could have been at the time of the accident was 0.047, *see* ROA 16 Ex M (Rumfield toxicologist Brown) at 116. Rumfield toxicologist Brown apparently based this extrapolation on the premise that the beer Henney drank was 4.50% alcohol, while Henney presented an affidavit from Miller Brewing Company stating that the beer in question was only 3.99% alcohol, *see* Henney Br at 11 n. 8 (failing to cite the record for either the toxicologist's assumption or the manufacturer's affidavit). By contrast, Henney's toxicologist assumed that his beer was 3.99% alcohol, leading to the conclusion that the *highest* Henney's BAC could have been at the time of the accident was 0.037 rather than 0.047, *see* ROA 16 Ex S at 186. Plaintiff Rumfield's toxicologist explained that "if we know what time the blood test was and what time the alleged drinking took place we can at least establish an upper level of, of what the blood alcohol would have been and not any higher. We may not know the actual amount." ROA 16 Ex S (plaintiff toxicologist Brown) at 102. Henney argues that "[w]hile there are assertions in the record that Mr. Henney may have said he had both 'two' beers and 'five' beers (according to Alan Brodbeck and the investigating sergeants), those three witnesses all agree that Mr. Henney did not give any indication of any impairment,

thus lending strong support to his insistence on two beers." Henney Br at 12.

As will be discussed below, the court notes that either of the experts' posited time-of-accident BACs for Henney was well below the threshold for automatic qualification as "operating while intoxicated" under the then-prevailing version of a pertinent Michigan statute (0.10 grams per ml of blood per MICH. COMP. LAWS § 257.625(1)(b)), though any reading under 0.10 g/ml leaves open the possibility that he could be found to be "operating while intoxicated" under MICH. COMP. LAWS § 257.625(1)(a), which focuses on being "under the influence" alcohol without reference to blood, urine or breath testing.

*Jury Instructions and the Jury Verdict.* There were two special jury forms, one related to driver Jeffrey Rumfield's claims and the other related to passenger Daniel Rumfield's claims, *see* ROA 16 Exs T and U. Neither of the jury forms contained any question relating to Henney's alleged intoxication, and the jury made no express finding regarding his intoxication or lack thereof. The seven-member jury's unanimous verdict found only that Henney was negligent,[2] that *both of the Rumfields were impaired* due to their consumption of alcohol, and that driver Jeffrey Rumfield's impairment was 20% of the cause of the accident. The jury further found that both the Rumfields were negligent and that their negligence was a proximate cause of the accident.

The jury rendered a verdict in favor of plaintiff Rumfield and against defendants Matthew Henney, his father Brian Henney (who owned the truck), and Kelly Fuels, which owned the convenience store which sold the 18 cans of beer to Matthew Hen-

**2.** At trial, Henney had admitted that his conduct that night was not typical of his ordinari-

ly safe driving habits, *see* Tr 2 at 179–180.

ney. As to driver Jeffrey Rumfield's claims, the jury apportioned fault as follows: 40% Henney, 40% Kelly Fuels (which sold Henney the beer), and 20% Jeffrey Rumfield himself, *see* ROA 16 Ex U. As to passenger Daniel Rumfield's claims, the jury apportioned fault in the same fashion, with the difference being that he bore some small responsibility for failing to wear a seat belt: 40% Henney, 40% Kelly Fuels convenience store, 15% Jeffrey Rumfield, and 5% Daniel Rumfield himself, *see* ROA 16 Ex U.

*Second Trial as to Defendant Kelly Fuels, But First Verdict Stays in Place as to Defendant Henney.* The Michigan Court of Appeals in September 2006 vacated a portion of the verdict due to erroneous evidentiary rulings [3] and remanded to the county circuit court for a new trial on the claims against Kelly Fuels alone. (Henney did not appeal, and the original judgment remained in place on the claims against him.) The instant appeal was stayed in April 2007 pending the state-court retrial of *Rumfield v. Kelly Fuels.*

Following the second trial in state court—to which Henney was not a party— the new jury in October 2009 likewise issued a verdict in favor of the plaintiffs Rumfield against Kelly Fuels. The jury found Kelly Fuels and Henney liable for about $3 million to the late Daniel Rumfield's estate and $5.9 million to the permanently injured Jeffrey Rumfield, apportioning 60% of the fault to Kelly Fuels and 40% to Henney. *See* Supp. Jt. Status Report of Oct. 16, 2009 (Doc 30) at 1–2. As Henney notes, *see* Defendant/Debtor Matthew Henney's Reply Brief filed April 5, 2007—Document 22 ("Henney Reply") at 2–3 with nn. 1–2, he and Kelly Fuels are *not* "jointly and severally liable" for any amounts from either the first-trial judgment or the second-trial judgment.

*Plaintiff Jeffrey Rumfield.* The jury again found that at the time of the accident, both Jeffrey and Daniel Rumfield had "impaired ability to function due to his consumption of intoxicating liquor", and that driver Jeffrey was negligent. But the jury then found that Jeffrey Rumfield's intoxication and negligence were *not* proximate causes of the accident. *See* Joint Status Report of Oct. 16, 2009, Attached Jury Verdict Forms (Doc 30–1).

*Defendant Kelly Fuels.* The jury made findings contrary to Kelly Fuels's version of events on two crucial matters relevant to its attempted defense under MICH. COMP. LAWS § 436.1801(7) (no liability for retail licensee under Dram Shop Act if it shows that it demanded and was shown the minor's Michigan driver's license or State identification card before selling him the alcoholic beverages). The jury found that Kelly Fuels's convenience-store employee did not demand that Henney show such identification before selling him beer, and that Henney did not in fact show her such allegedly genuine-looking identification establishing that he was at least 21 years old. *Id.* Those findings precluded a section 1801(7) defense for Kelly Fuels. The

---

**3.** One of the rulings involved the admission of store clerks' testimony that Henney had previously successfully presented identification for the purchase of alcohol from that establishment. That testimony was relevant because MICH. COMP. LAWS § 436.1801(7) provides, in pertinent part, that "proof that the defendant retail licensee ... demanded and was shown a Michigan driver license or official state personal identification card, appearing to be genuine and showing that the minor was at least 21 years of age, shall be a defense to the action." Defendant Kelly Fuels sought to introduce the testimony to show that the identification which Henney presented on the night in question, which was the same as the identification he presented on the two previous occasions, "appear[ed] to be genuine", as required for the Dram Shop Act section 1801(7) defense.

jury then found that Kelly Fuels's selling the beer to Henney was a proximate cause of the damages suffered by the injured driver Jeffrey Rumfield and the deceased passenger Daniel Rumfield. *See* Joint Status Report of Oct. 16, 2009, Attached Jury Verdict Forms (Doc 30–1).

Plaintiff Rumfield and Defendant Kelly Fuels negotiated a settlement of the damages issue, and the Eaton County Circuit Court issued an order approving that settlement and dismissing the case, *see* Supp. Jt. Status Report of Jan. 15, 2010 (Doc 31) at 1 and Exhibit ("Ex") I. The parties agree that while the state circuit court "may be called upon to issue further orders with respect to distribution of the settlement proceeds ... Plaintiff [Rumfield]'s claims against all defendants in the state court action, including Kelly Fuels, Inc., have now been concluded." Doc 31 at 2. By order issued January 20, 2010 (Doc 33), this court issued an order (Doc 33) lifting the stay of the instant appeal and directing the parties to file supplemental briefs. Plaintiff/Judgment-creditor Rumfield filed a second supplemental brief in February 2010 (Doc 34), and defendant/Judgment-debtor Henney filed his second supplemental brief (Doc 36) in March 2010.

*Proceedings in the United States Bankruptcy Court for the Western District of Michigan.* In April 2005, facing a judgment of at least $3.56 million (not counting post-judgment interest), defendant Matthew Henney petitioned for relief under Chapter 7 of the Bankruptcy Code, *see* Record On Appeal ("ROA") 28 (Case No. 05–05667), and plaintiff Rumfield responded in August 2005, by initiating adversary

proceeding 05–80745, *see* ROA 6. **Rumfield asked the bankruptcy court to determine that Henney's debt due to his 40% fault (from the first state-court trial's jury verdict) was non-dischargeable pursuant to 11 U.S.C. § 523(a)(9).** Section 523 is entitled Exceptions to Discharge, and its pertinent subsection provides as follows:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \*

(9) For death or personal injury caused by the debtor's operation of a motor vehicle, vessel, or aircraft *if such operation was unlawful because the debtor was intoxicated from using alcohol,* a drug, or another substance[.]

11 U.S.C. § 523(a)(9) (emphasis added).[4] Henney's answer in the bankruptcy court, of course, contended that subsection (9) did not apply and that his judgment debt was therefore dischargeable, *see* ROA 7. Rather than engage in additional discovery, the parties agreed to submit portions of the state-court trial record to the bankruptcy court, *see* ROA 9. Plaintiff Rumfield submitted his portions of the trial record in January 2006, *see* ROA 12.

In April 2006, the bankruptcy court directed plaintiff Rumfield to file a motion for summary judgment on the ground of collateral estoppel, ROA 13, and Rumfield did so in May 2006, filing additional portions of the trial record and arguing that all the elements of section 523(a)(9) nondischargeability were necessarily established by the jury's verdict in the first state-court

---

**4.** The bankruptcy court issued its opinion in December 2006. Since that time, Congress has amended Bankruptcy Code section 523, Exceptions to Discharge, once, but the amendment did not affect subsection

523(a)(9). It merely changed a dollar amount in section 523(a)(2)(C)(i)(I). *See* Pub.L. No. 111–327, sec. 2(a)(18), 124 Stat. 3559 (Dec. 22, 2010).

trial, *see* ROA 14. Defendant Henney's June 2006 opposition brief (ROA 15) filed yet further portions of the state trial-court record (ROA 16), responding that the state-court judgment did *not* determine the elements of section 523(a)(9) discharge-ability, and that the state-court record as matter of law could not even support finding those elements.

Defendant/Judgment Debtor/Debtor Henney recounts the bankruptcy-court proceedings regarding the collateral-estoppel argument as follows:

> At the hearing on the parties' cross motions for summary judgment, the bankruptcy court cut short defense counsel's argument[,] stating that the court had recently issued an opinion that 11 U.S.C. § 523(a)(9) "was not directed to each specific state's description of what intoxication means and therefore the fact that it says intoxication in the Bankruptcy Code that doesn't mean that some other use of alcohol such as impairment or use of is irrelevant or to be ignored" and told defense counsel that, therefore, "that argument is going nowhere with me." ROA 17, p. 16.

> The bankruptcy court appeared to be referring to defense counsel's argument that Matthew Henney's alleged violation of Michigan's "zero tolerance" law, which prohibits minors from driving if they have "*any* bodily alcohol content," was insufficient to meet the standard of "intoxication" within the meaning of section 523(a)(9) of the Bankruptcy Code. Nonetheless, defense counsel pressed on, explaining in detail why Matthew Henney's "intoxication" had not been established in the state court case. Counsel agreed that while "the jury verdict did ask questions about intoxication" of [plaintiffs] Jeffrey and Daniel Rumfield, "[t]he question was not there as to Mr. Henney," *id*, p. 17, because it was not

necessary: Matthew Henney "had admitted negligence already" so "[t]here was no chance the jury could find Matt Henney not liable. . . . So, therefore the plaintiff didn't need to litigate [the issue of Henney's] intoxication in order to recover against Matt Henney." *Id.*, p. 18. In summary, "nobody asked the question [in the state court case], was Matt Henney intoxicated, because they didn't have to prove it." *Id.*

The bankruptcy court dismissed defense counsel's argument as "irrelevant." *Id.*, p. 19. The bankruptcy court then identified the recent opinion regarding § 523(a)(9) as *Simons v. Hart (In re Hart)*, 347 B.R. 635 (Bankr.W.D.Mich. 2006). Also at the hearing, Plaintiff's counsel, apparently, had brought to the bankruptcy court's attention an unpublished Michigan Court of Appeals decision in *Carpenter v. Simonian*, [2004 WL 1676898] 2004 Mich.App. Lexis 2026 (Docket No. 247258, decided 7/27/2004), that Plaintiff contended established that the jury's finding against Kelly Fuels on the Dramshop Act claim (for selling alcohol to a minor) established Matthew Henney's intoxication. Defense counsel succinctly noted that he "didn't know if the jury was aware of that decision at the time of trial." *Id.*, p. 20.

[The bankruptcy court invited supplemental briefs on this issue, *see* ROA 25 and ROA 26.] * * * [T]he court accepted both of Plaintiff [Rumfield]'s arguments, namely, that the verdict against Kelly Fuels on the Dramshop Act claim and Matthew Henney's alleged violation of Michigan's "zero tolerance" law each established the elements of non-dischargeability under 11 U.S.C. § 523(a)(9), notwithstanding the fact that Matthew Henney's "intoxication" was not actually litigated in or necessary to the outcome of the state court case.

Debtor–Appellant Henney's Original Brief on Appeal filed March 7, 2007 (Doc 19) ("Henney Br") at 14–16. The January 5, 2007 order of the bankruptcy judge, the Honorable Jo Ann Stevenson, stated as follows, in pertinent part:

> the jury must have found the Defendant [Henney] to be impaired in order for Kelly Fuels to be found liable under the [Michigan Dram Shop Act]. Second, Michigan has a zero tolerance law regarding alcohol and minors. For a person under the legal drinking age there is no acceptable blood alcohol level minimum. MCLA § 257.625(6). Even though Defendant was successful in evading detection [sic] until five hours after the accident, the record is replete with testimony from witnesses that the Defendant himself was drinking that fateful night.

> \* \* \*

> In keeping with the precedent of this and other courts, the intent of Congress, the Michigan Legislature, and the testimony of the Defendant and other witnesses in the state court action, we find that a reasonable trier of fact could and did determine that the Defendant's unlawful operation of a motor vehicle due to his exceeding the legal limits of alcohol allowed for minors in this state caused injury and death to Jeffrey and Daniel Rumfield. Consequently, the debt is non-dischargeable.

*Id.* at 4 and 6.

Henney appealed to this court pursuant to 28 U.S.C. § 158(c)(1)(B) and 6th Circuit Bankruptcy Appellate Panel Local Bankruptcy Rule 8001–3(a)(2), contending that the bankruptcy judge erred in granting Rumfield's summary-judgment motion and in denying his own cross-motion for summary judgment, *see* Henney Br at 16.

## STANDARD OF REVIEW: APPEAL FROM BANKRUPTCY COURT

■ This court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact only for clear error, *In re Wolters*, 429 B.R. 587, 593 (W.D.Mich. 2010) (Maloney, C.J.) (citing *In re Wingerter*, 594 F.3d 931, 935–36 (6th Cir.2010) (citation omitted) and Fed. R. Bankr.P. 8013 ("On an appeal, the District Court or a Bankruptcy Appellate Panel may affirm, modify or reverse a Bankruptcy Judge's Judgment, Order or Decree or remand with instructions for further proceedings. The Findings of Fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous[,] and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of the witnesses.")).

■ It is the appellant's burden to show that a factual finding was clearly erroneous, *In re Oakes*, No. 92–3935, 7 F.3d 234, 1993 WL 339725, \*1 (6th Cir. Sept.3, 1993) (per curiam) (Kennedy, Siler, Contie) (citing *In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (9th Cir. BAP 1989)). If the appellant fails to carry this burden, the bankruptcy court's factual findings will stand. *See In re Shanker*, No. 05–8085, 347 B.R. 115, 2006 WL 1520082, \*7 (6th Cir.BAP June 5, 2006) (*C.J. Aug*, Gregg, Latta) (citing *Abrams v. Sea Palms Assocs., Ltd.*, 229 B.R. 784, 788–89 (9th Cir. BAP 1999)).

■ "A factual determination is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Long*, No. 07–8022, 385 B.R. 799, 2008 WL 552495, \*1 (6th Cir. BAP Feb.29, 2008) (quoting *Bailey v. Bailey*, 254 B.R. 901, 903 (6th Cir. BAP 2000)); *see also U.S. v. Goff*, 187 Fed.Appx. 486, 489 (6th Cir.2006) (Griffin, J.) (citing *US v. Monumental Life Ins.*

*Co.,* 440 F.3d 729, 732 (6th Cir.2006)). As Judge McKeague has noted, showing clear error under this standard is an "especially onerous" task, *see In re Campbell,* 1994 WL 924299, *4 (W.D.Mich. Sept.28, 1994) (citing *In re Burgess,* 955 F.2d 134, 136–37 (1st Cir.1992)), because there is no clear error where the factfinder merely chose between "two permissible views of the evidence." *Elder v. Berghuis,* 644 F.Supp.2d 888, 896 (W.D.Mich.2009) (Maloney, C.J.) (citing *Kelly v. Withrow,* 822 F.Supp. 416, 422 (W.D.Mich.1993) (Gibson, C.J.), *aff'd,* 25 F.3d 363 (6th Cir.1994)); *see also Bailey v. USF Holland, Inc.,* 526 F.3d 880, 885 (6th Cir.2008) (Griffin, J.) (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

In Michigan's state courts, mixed legal/factual determinations are split into their respective components for the purposes of appellate review: the legal component is subject to *de novo* review and the factual component is subject to clear-error review. *See People v. Waclawski,* 780 N.W.2d 321, 286 Mich.App. 634 (Mich. App.2009) (citing *People v. Williams,* 475 Mich. 245, 250, 716 N.W.2d 208, 212 (Mich. 2006)), *app. denied,* 488 Mich. 1054, 794 N.W.2d 621 (Mich.2011). Likewise, our federal Court of Appeals sometimes splits the factual and legal components in that same fashion for review, *see U.S. v. Everett,* 601 F.3d 484, 487–88 (6th Cir.2010) (citing *US v. See,* 574 F.3d 309, 313 (6th Cir.2009)), and sometimes it states simply that mixed determinations of law and fact are subject to *de novo* review, *see U.S. v. McDaniel,* 371 Fed.Appx. 617, 619 (6th Cir.2010) (citing *US v. Campbell,* 549 F.3d 364, 370 (6th Cir.2008)).

## DISCUSSION

There are two major issues on appeal which it is appropriate for this court to resolve in its role as an appellate court.

**First,** did the bankruptcy court err as a matter of law in concluding that the jury verdict in the second state-court trial (*Rumfield v. Kelly Fuels*) necessarily found that Henney was intoxicated under state law at the time of the accident? **Second,** if not, did Henney's violation of Michigan's "zero tolerance for alcohol consumption by minors" statute necessarily establish that he was intoxicated under state law at the time of the accident? On both scores, the answer is no.

■ *Creditor Rumfield's Burden to Prove Nondischargeability.* Preliminarily, the court notes that if a certain type of debt is customarily or presumptively dischargeable in bankruptcy, the creditor must establish the applicability of a non-dischargeability provision by a preponderance of the evidence. *See In re Sullivan,* 19 Fed.Appx. 180, 180 (6th Cir.2001) (per curiam) (Keith, Norris, Batchelder) (citing *Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (unanimous decision 9–0)). Thus the question before the bankruptcy court was whether plaintiff/judgment-creditor Rumfield established by a preponderance of the evidence that defendant Henney's judgment debt resulted from motor-vehicle operation which was illegal because he was intoxicated from consumption of alcohol.

■ *Bankruptcy Code § 523 Does Not Define Intoxication, so the Court Must Consult Michigan State Law.* Section 523 neither defines what it means by "intoxication" nor does it incorporate by reference a definition from elsewhere in the Bankruptcy Code or some other source of federal law. Nor has the court located any Supreme Court or Sixth Circuit decisions suggesting that some federal statute or regulation might supply a suitable definition of the term, or of terms in the nondischargeability provisions generally. Accordingly, this court joins other federal

738

courts which have logically held that a federal court applying section 523(a)(9) should adopt the definition of "intoxication" or "intoxicated" which is supplied by the relevant State's law. *See Whitson v. Middleton*, 898 F.2d 950, 952 (4th Cir. 1990) ("In determining legal intoxication for purposes of § 523(a)(9), a court must apply state law."), *cited by In re Wiggins*, 180 B.R. 676, 679 (M.D.Ala.1995) and *In re Chapman*, 2007 WL 2446733, *5 (Bankr. N.D.Ohio Aug.22, 2007) (Mary Ann Whipple, U.S. Bankr.J.) and *In re Phalen*, 145 B.R. 551, 554 (Bankr.N.D.Ohio 1992) (Richard L. Speer, U.S. Bankr.J.). *Accord In re Crump*, 321 B.R. 879, 881–82 (Bankr. N.D.Ohio 2004) ("the statute's utilization of the term 'unlawful' denotes that applicable nonbankruptcy law is to be applied—here, this being Ohio law—when making a determination of intoxication.") (citing Ohio criminal statute); *In re Howard*, 193 B.R. 835 (Bankr.S.D.Ohio 1996) (Wm. A. Clark, C.J.) (citing same Ohio criminal statute); *Dougherty v. Brackett*, 51 B.R. 987, 989 (Bankr.D.Colo.1985) ("[i]n enacting a statute to apply to the drunk driving laws of fifty different states, Congress could not have incorporated the legal terminology used by each state in defining the various offenses. Therefore, Congress chose the term 'legally intoxicated' and then referred to each state's laws for a definition of that term. There is no indication that Congress intended to draw a distinction between degrees of intoxication. The purpose of § 523(a)(9) is to protect victims of accidents caused by drunk drivers.");

*Waskiewicz v. Tuzzolino (In re Tuzzolino)*, 70 B.R. 373 (Bankr.N.D.N.Y.1987); *In re Gomez*, 70 B.R. 96, 98 (Bankr.S.D.Fla. 1987) (citing *In re Cunningham*, 48 B.R. 641 (Bankr.W.D.Tenn.1985) (Wm. B. Leffler, U.S. Bankr. J.)).

**This court determines that it and the bankruptcy court are obligated to define "intoxication" by reference to then applicable Section 625 of the Michigan Vehicle Code, which provides, in pertinent part:**

(1) A person, whether licensed or not, shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. *As used in this section, "operating while intoxicated" means either of the following applies:*

(a) *The person is under the influence of alcoholic liquor,* a controlled substance, or a combination of alcoholic liquor and a controlled substance;

(b) *The person has an alcohol content of 0.10 grams or more per 100 milliliters of blood,* per 210 liters of breath, or per 67 milliliters of urine. . . .

MICH. COMP. LAWS § 257.625(1) (2001) (emphasis added).[5] *Accord In re Goormastic*, 1995 WL 404722 (Bankr.N.D.Ohio June 7, 1995) (James H. Williams, C.J.) (citing

5. The court rejects plaintiff/creditor Rumfield's notion that the federal courts should ignore the definition of intoxicated which the Michigan Legislature provided in an actual statute, in favor of a standard jury instruction (75.02), *see* P's Opp at 12—particularly when the record does not reflect that the state trial court ever gave the jury that instruction with regard to Henney's intoxication or lack thereof.

In any event, the court's conclusion that summary judgment on the issue of Henney's intoxication was inappropriate, would not change if the court used Michigan Jury Instruction 75.02's statement that a person is intoxicated when, as a result of drinking alcoholic liquor, "his or her mental or physical senses are impaired."

equivalent and very similar Ohio criminal statute) ("*[A] finding of nondischargeability under either Section 523(a)(6) or 523(a)(9) cannot be based solely on the fact that Defendant operated a motor vehicle after consuming alcohol.* Under either section, the court must find by a preponderance of the evidence that that the Defendant was operating a motor vehicle while intoxicated according to Ohio law. Under this state's law, a person is operating a motor vehicle while intoxicated if he is under the influence of alcohol or his blood alcohol content is 0.10% by weight or greater.") (citations omitted, emphasis added). As it stands, the record contains no laboratory test results or expert opinion supporting a finding that plaintiff Rumfield had a BAC any greater than 0.07, and the record suggests that his BAC at that time was substantially less than that. Therefore, *on this record it cannot be said that Henney was "operating [his motor vehicle] while intoxicated" as defined by Michigan Vehicle Code section 257.625(1)(b)* (2001). (Such a finding would have compelled summary judgment for plaintiff/creditor Rumfield.)

The question remains whether the record compels the conclusion that Henney was "operating while intoxicated"—or compels the conclusion that he was *not* so operating—as Michigan Vehicle Code section 257.625(1) *(a)* defines the term, i.e., whether he was *"under the influence of alcoholic liquor,* a controlled substance, or a combination of alcoholic liquor and a controlled substance[.]"

As seen below, the bankruptcy court erroneously held that the jury verdict in *Rumfield v. Kelly Fuels* and Henney's violation of the Michigan "zero tolerance" statute each establish as a matter of law that Henney was intoxicated. With those erroneous grounds for decision out of the way, there remains a factual question as to whether Henney was "under the influence" of alcohol, the only remaining way to render him intoxicated under the relevant state statute, MICH. COMP. LAWS § 257.625(1). The bankruptcy court never properly recognized that issue and that legal standard, so the matter must be determined by that court in the first instance. The case will be remanded to the bankruptcy court for that purpose, and that court is free, of course, to develop a fuller record if it wishes.

*Issue 1. Bankruptcy Court Erred in Concluding that Second State–Court Jury Verdict Preclusively Established that Henney was Intoxicated at the Time of the Accident.*

■ Preliminarily, the court notes that collateral estoppel principles do apply to discharge exceptions proceedings pursuant to 11 U.S.C. § 523(a). *In re Monus,* 167 Fed.Appx. 494 (6th Cir.2006) (per curiam) (Nelson, Daughtrey, Rogers) (citing *Grogan v. Garner,* 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (unanimous decision 9–0)). A bankruptcy court may give collateral-estoppel effect to "those elements of the claim that are identical to the elements required for discharge and that were actually litigated and determined in the prior action." *Grogan,* 498 U.S. at 284 n. 11, 111 S.Ct. 654 (citing Restatement Second of Judgments § 27 (1982)). Or, to put it slightly differently, "the Supreme Court has held that, although the bankruptcy court has exclusive jurisdiction over actions to determine dischargeability, if a state court, in the course of adjudicating state[-]law questions, also determines actual issues with standards identical to those in § 523(a), collateral estoppel bars relitigation of those issues by the bankruptcy court in § 523(a) actions", *In re Jones,* Bankr.No. 04–32256, Adversary No. 10–3045, —— F.Supp.2d ——, ——, 2011 WL 204280, *5 (Bankr.

E.D.Tenn. Jan.21, 2011) (Stairs, U.S. Bankr. J.) (citing *Grogan,* 498 U.S. at 284, 111 S.Ct. 654 n.11).

██ In determining whether to accord preclusive effect to a state-court judgment—in this case the jury's verdict against Henney in the first trial and/or the jury's verdict in the second trial against Kelly Fuels alone—this court obeys the principle that the judicial proceedings of any court of any State "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. In other words, the principles reflected in the full faith and credit statute generally require that a federal court accord a state-court judgment the same preclusive effect which it would be entitled to under the laws of that State. *See Cadle Co. v. Reiner, Reiner & Bendett, P.C.,* 307 Fed.Appx. 884, 891 (6th Cir.2009) (Martin, *Richard Allen Griffin.* 8th Cir. J. John R. Gibson) (citing *Bates v. Township of Van Buren,* 459 F.3d 731 (6th Cir. 2006)); *see also Griffin v. Reznick,* 2008 WL 4741738, *6 (W.D.Mich. Oct.28, 2008) (Maloney, C.J.) (citing *Bates,* 459 F.3d at 734 (citing *Migra v. Warren City Sch. Dist. Bd. of Ed.,* 465 U.S. 75, 80–82, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984))).

██ Under Michigan law, the species of collateral estoppel known as issue preclusion "precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, fi-

nal judgment and the issue was . . . actually litigated, and . . . necessarily determined." *People v. Gates,* 434 Mich. 146, 452 N.W.2d 627, 630–31 (Mich.1990). As the Michigan Supreme Court put it more recently, "Generally, for collateral estoppel to apply three elements must be satisfied: (1) 'a question of fact essential to the judgment must have been actually litigated and determined in a valid, final judgment'; (2) 'the same parties must have had a full (and fair) opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'" *Monat v. State Farm Ins. Co.,* 469 Mich. 679, 683–84, 677 N.W.2d 843, 845–46 (Mich.2004) (quoting *Storey v. Meijer, Inc.,* 431 Mich. 368, 373 n. 3, 429 N.W.2d 169 (Mich.1988)). "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue[,] that issue must have been a party, or a privy[6] to a party, in the previous action. In other words, 'the estoppel is mutual if the party taking advantage of the earlier adjudication would have been bound by it, had it gone against him.'" *Monat,* 469 Mich. at 684–85, 677 N.W.2d at 846–47 (quoting *Lichon v. American Universal Ins. Co.,* 435 Mich. 408, 427, 459 N.W.2d 288 (Mich. 1990) (citation omitted)).

██ Henney simply was not a party defendant in the second state-court trial. Henney never appealed the jury verdict against him from the first state-court trial, and the Michigan Court of Appeals vacated the judgment and ordered retrial only as to Kelly Fuels due to erroneous evidentiary rulings which affected Kelly Fuels'

---

6. A privy is one who, after rendition of a judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase. *Vector Environmental Group, Inc. v. Fifth Third Bank,* 2010 WL 3564830, *3 (Mich.App. Sept.14, 2010) (per curiam) (P.J. Zahra, Cavanagh, Fitzgerald) (citing *Howell v. Vito's Trucking & Excavating*

*Co.,* 386 Mich. 37, 42, 191 N.W.2d 313 (Mich. 1971)); *accord Dietrich v. Sun Exploration & Production Co.,* Nos. 92–1981 & 93–1442, 21 F.3d 427, 1994 WL 108961 (6th Cir. Mar.30, 1994) (*C.J. Merritt,* Milburn, Siler) (citing *Howell,* 386 Mich. at 43, 191 N.W.2d 313). Plaintiff/creditor Rumfield has not shown that Henney is a privy of Kelly Fuels under this definition.

"genuine-looking ID" defense under the Dram Shop Act. Thus, any issue purportedly determined by the jury verdict against Kelly Fuels in the second state-court trial can be invoked to bind Henney if plaintiff/creditor Rumfield shows that Henney was in privity with Kelly Fuels. This Rumfield has not attempted to do. *Cf. Bennett v. Mackinac Bridge Authority,* No. 287628, 289 Mich.App. 616, —— N.W.2d ——, 2010 WL 3418358, *7 (Mich. Aug. 31, 2010) (P.J. K.F. Kelly, *Jansen,* Zahra) ("Nor will plaintiff be permitted to invoke the doctrine of collateral estoppel (also known as issue preclusion) offensively against defendants on remand. Allstate did not appear for trial or meaningfully defend itself in the previous action."), *app. denied,* 489 Mich. 858, 795 N.W.2d 8 (2011) and 795 N.W.2d 11 (2011) (Nos. 141897 and 141899).

The court first asks, what is the "standard" in § 523(a) to which the standard applied in the underlying state-court action must be identical in order for the state-court judgment to have preclusive effect in federal bankruptcy court dischargeability proceeding? As noted above, section 523 does not define "intoxication" or borrow any definition of the term from elsewhere in the Bankruptcy Code or federal law, so a federal court analyzing the applicability of section 523(a)(9) must follow a suitable state-law definition of the term "intoxication." Here that is clearly MICH. COMP. LAWS § 257.625(1). Either of the experts' posited time-of-accident BACs for Henney was well below the threshold for rebuttably presumptive qualification as "operat-ing while intoxicated" under the then-prevailing version of said statute (0.10 grams per ml of blood per MICH. COMP. LAWS § 257.625(1)(b) (2001)), though the parties might be permitted to introduce additional expert testimony and opinion in the lower court's discretion. Next, any reading under 0.10 g/ml still leaves open the possibility that Henney could be found to have been "operating while intoxicated" under MICH. COMP. LAWS § 257.625(1) *(a),* which focuses on being "under the influence" of alcohol without reference to specified levels of alcohol as measured by blood, urine or breath testing.

The bankruptcy court held that the verdict against beer-seller Kelly Fuels in the second state-court trial necessarily established that Henney was intoxicated, but this conclusion is legally and logically flawed. (Plaintiff/creditor Rumfield cannot use the verdict against Kelly Fuels in the first trial to collaterally estop any party on any issue, because the Michigan Court of Appeals vacated the portion of the verdict relating to Kelly Fuels.) Collateral estoppel requires that an issue actually litigated, and in Michigan "[a]n issue actually litigated if it is put into issue by the pleadings, submitted to the trier of fact, and determined by the trier of fact." *In re Markowitz,* 190 F.3d 455, 462 (6th Cir.1999) (citing *Latimer v. Mueller & Son, Inc.,* 149 Mich.App. 620, 386 N.W.2d 618, 627 (Mich.1986)).[7] Alternately, the Michigan Supreme Court holds that "[a]n issue is necessarily determined only if it is 'essential' to the judgment", *People v. Gates,* 434 Mich. 146, 158, 452 N.W.2d 627,

---

7. To the extent that ancient Michigan Supreme Court decisions hold or imply that an issue need not be submitted to the trier of fact, such decisions must yield to this later Michigan Supreme Court decision. *See* P's Opp at 5 (citing *Tessler v. Rothman,* 232 Mich. 62, 67–68, 204 N.W. 694 (Mich.1925) and citing *Barker v. Cleveland,* 19 Mich. 230, 235– 36 (Mich.1869)). This court does not decide whether the Michigan Supreme Court's statements of the collateral-estoppel standard in *Tessler* and *Barker* are inconsistent with its statement of the standard in *Latimer,* but notes merely that the later decision, quoted above, controls in case of such inconsistency or conflict.

631 (Mich.1990). **The issue of whether Henney was intoxicated was simply not "submitted to the trier of fact."** Rather, the jury in the first trial issued a special verdict as to the Rumfields only, finding that plaintiff Jeffrey Rumfield had an impaired ability to function due to the influence of intoxicating liquor. The jury in the first trial made no such finding as to defendant Henney, much less in the second trial. On this basis alone, Henney cannot be collaterally stopped in bankruptcy proceedings as to any alleged finding that he was intoxicated at the time of the accident.

**Plaintiff/creditor Rumfield contends that the issue of Henney's alleged intoxication was** *implicitly* **submitted to the trier of fact, as the bankruptcy court believed. This argument is untenable.** *See* P's Opp at 7–10. Without citing authority, the bankruptcy court asserted that in order for the jury to find Kelly Fuels liable for violating the Dram Shop Act, the jury must have decided that four elements existed: Henney bought alcohol from Kelly Fuels, Kelly Fuels sold him the alcohol without requesting or seeing identification, Henney drank some of that alcohol, and Henney went on to cause the accident, *see* ROA 27 (Bankruptcy Court Mem. Order) at 3. Even if this formulation of the elements of a Dram Shop Act violation were accurate and complete, which it is not, a jury determination that those elements existed would not establish that Henney was intoxicated under either prong of the pertinent statute, MICH. COMP. LAWS § 257.625(1) (2001). A finding that Henney bought beer from Kelly Fuels without showing or being asked for ID and then drank some unspecified amount of the beer and caused the accident does not necessarily tell us anything about whether he was intoxicated under the subjective test, MICH. COMP. LAWS § 257.625(1)(a) (2001), i.e., because it does not compel a conclusion as to

whether he was "under the influence." Nor does a finding that Henney drank an unspecified amount of the Kelly Fuels beer under those circumstances necessarily tell us anything about whether he was intoxicated under the objective a/k/a *per se* test, MICH. COMP. LAWS § 257.625(1)(b) (2001), because it does not equate to a BAC reading of 0.10 grams per deciliter or enable the court to calculate such a reading. As Henney points out, any amount of alcohol consumed would have satisfied the bankruptcy court's inaccurate statement of the elements of Kelly Fuels' Dram Shop Act violation, *see* Henney Br at 21.

Moreover, an examination of the actual instructions which the state court gave the jury on the Dram Shop Act claim against Kelly Fuels does not show that the jury was expressly or implicitly presented with the Henney intoxication issue either. The state trial court instructed the jury as follows in pertinent part (omitting the instruction on Kelly Fuels' attempted defense, which the jury ultimately rejected):

> We have a State law here in Michigan known as the Dram Shop Act which provides that persons who are injured or damaged by a minor may, under certain circumstances, receive damages from the person who sold, gave, or furnished the alcoholic liquor. Alcoholic liquor includes beer and wine as well as other alcoholic beverages.

The plaintiff has the burden of proving, under the Dram Shop Act, each of the following:

> A. That the estate of Daniel Rumfield, Jeffrey Rumfield, Timothy Rumfield, and/or [the Rumfield boys' mother] Julie Thorn were injured or damaged by Matthew Henney.
>
> And:
>
> B. That the selling of the alcoholic liquor was a proximate cause of the

estate of Daniel Rumfield, Jeffrey Rumfield, Timothy Rumfield, and/or Julie Thorn's injury or damage.

ROA 25 (Def's Supp Br) Ex 1—Transcript of Jury Trial Sept. 29, 2004 at 372. Henney cogently reasons that as the jury instructions were actually phrased and in light of the jury's precise verdict, we cannot be sure that the jury found that Kelly Fuels's selling the beer to Henney was a proximate cause of the Rumfields' damage *due to the beer making Henney intoxicated.* "Consistent with this instruction, the jury could have found that Kelly Fuels' selling of alcohol to Matthew Henney was a proximate cause of Plaintiff's injuries because [Henney] gave some of the beer to Jeffrey and Daniel Rumfield *both of whom the jury explicitly found to have 'an impaired ability to function due to the influence of intoxicating liquor.'*" Henney Br at 22 (emphasis added). In other words, technically the jury's verdict against Kelly Fuels on the Dram Shop claim could have been based on (1) a finding that selling the beer to minor Henney without proper or genuine-looking ID was a proximate cause of the accident because *Henney* drank the beer and *his* consumption thereof rendered him intoxicated in a way and to a degree that contributed to or caused the accident, *or* (2) a finding that selling the beer to minor Henney without proper or genuine-looking ID was a proximate cause of the accident because *the Rumfields* drank the beer and *their* consumption thereof rendered *them* intoxicated in a way and to a degree that contributed to or caused the accident, *or* (3) a finding that selling the beer to minor Henney without proper or genuine-looking ID was a proximate cause of the accident because *Henney* drank the beer and *his* consumption thereof rendered him intoxicated in a way and to a degree that contributed to or caused the accident, *and* because *the Rumfields* drank the beer and *their* con-

sumption thereof rendered *them* intoxicated in a way and to a degree that contributed to or caused the accident. Because the jury found that the Rumfields both had an impaired ability to function because of their alcohol consumption—and made no such finding as to Henney—any of the three rationales could have been the basis in the jury's minds for their Dram Shop verdict against Kelly Fuels.

Contrary to this view, in holding that the Dram Shop verdict against Kelly Fuels necessarily included a finding that Henney was intoxicated, the bankruptcy court (ROA 27 at 4) relied on *Carpenter v. Simonian,* No. 247258, 2004 WL 1676898 (Mich. App. July 27, 2004) (per curiam) (P.J. Saad, Talbot, Borrello) for the proposition that "in the case of selling alcohol to a minor, the retail licensee will only be held liable [sic, should be 'will be held liable only'] where the purchasing minor is the person who causes the injury to another." Henney notes that *Carpenter* is an unpublished decision, and it is true that unpublished decisions of the Michigan Court of Appeals lack precedential force, but *Carpenter* cited a published, precedentially binding decision for the aforementioned proposition, *Dobson v. Maki,* 184 Mich. App. 244, 249, 457 N.W.2d 132 (Mich.App. 1990). In *Carpenter,* the panel upheld summary disposition for the defendant retail licensee on a Dram Shop Act claim because "plaintiff has demonstrated only that a minor purchased alcohol with fraudulent identification, not that the purchasing minor caused the injuries to plaintiff. Instead the fact is that the purchasing minor gave the alcohol to another minor who then struck the plaintiff's vehicle." *Carpenter,* 2004 WL 1676898 at *1. This is what Henney speculates the jury in the second trial could have found as the basis for its verdict against Kelly Fuels, i.e., that Kelly Fuels' sale of the beer to Henney

was the proximate cause of the damage to the Rumfields not because he drank it and became intoxicated, but because he gave some to the Rumfields and they became intoxicated (as the jury in fact found).

The *Carpenter* panel went on to state, "A literal reading of MCL 436.1801 mandates that plaintiff has no cause of action against the retail licensee under the circumstances...." *Carpenter*, 2004 WL 1676898 at *1. This seems necessarily inconsistent with Henney's theory that the jury could have found Kelly Fuels liable under the Dram Shop Act only because its sale of the beer to him enabled the provision of beer to the Rumfield minors, who then became intoxicated and impaired in their ability to drive properly and avoid the accident. But—and Henney fails to mention this even though it benefits him— the *Carpenter* panel went on to state, citing published precedent, that "[w]here a purchaser is legally acting as an agent for the recipient of the alcohol, the defendant-seller could be liable for damages *caused by the recipient*", in this case the Rumfield boys, "under proper circumstances", *Carpenter*, 2004 WL 1676898 at *2 (citing *Meyer v. State Line Super Mart, Inc.*, 1 Mich.App. 562, 569, 137 N.W.2d 299 (Mich. App.1965)). The record here does not appear conclusive as to whether a reasonable factfinder could find that Henney effectively acted as the Rumfields' agent in the purchase of the 18 containers of beer; in any event, it does not appear that the parties raised or the bankruptcy court considered the issue. If Henney did act as the Rumfields' agent in the purchase of the beer from Kelly Fuels without showing genuine-looking ID, then the jury could find Kelly Fuels liable under the Dram Shop Act for harm for which *the Rumfields' intoxication* was a proximate cause.

Moreover, significantly, Michigan has a Model Civil Jury Instruction on "Intoxi-cation", Nos. 75.02, and Henney states without contradiction (Henney Br at 23) that the state court did *not* give it. Rather, the state trial court gave only the Model Civil Jury Instructions 75.01, 75.02 and 75.11, which specifically govern the sale of alcohol to minors. This lends further support to Henney's contention that the issue of his intoxication was not submitted to the jury.

**Finally, even if the bankruptcy court and Rumfield were correct that the Henney intoxication issue was actually litigated and determined by the verdict against Kelly Fuels in the second trial *and* that it was essential to that judgment, Michigan law holds that Henney still cannot be precluded from relitigating the issue in bankruptcy court given the procedural posture of the two state-court trials.** Although neither party mentions it, the Michigan Supreme Court has expressly adopted the principle enunciated in the Restatement Second of Judgments that

> [a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> (1) The party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgment in the initial action; or....

*Monat*, 469 Mich. at 685 n. 2, 677 N.W.2d at 847 n. 2 (quoting 1 Restatement Second of Judgments, Chapter 3 Former Adjudication, Section 28 at 273); *accord Gilbert v. Ferry*, 413 F.3d 578, 582 (6th Cir.2005) (holding that Restatement of Judgments 2d section 28 exception to issue preclusion did not apply, because "[i]n this case, the Plaintiffs could (and some in fact did) seek review of the state court's adverse deter-

mination of their motions to recuse by seeking *certiorari* to the United States Supreme Court.") (citing *Graves v. Warner Bros.*, 469 Mich. 853, 669 N.W.2d 552 (Mich.2003)).

This exception to collateral estoppel applies here, because Henney was not a party to the *Rumfield v. Kelly Fuels* trial and there is no suggestion that he could have obtained review of the judgment against Kelly Fuels in the Michigan appellate courts. As the Michigan Supreme Court has explained, "A party in this connection is one who is 'directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment.'" *Howell v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 191 N.W.2d 313 (Mich.1971) (treatise citations omitted), *followed by Duncan v. State Hwy. Comm'n*, 147 Mich.App. 267, 271, 382 N.W.2d 762 (Mich.App.1985). *See also Martin v. Wilks*, 490 U.S. 755, 761–62, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (Rehnquist, C.J.) (" 'it is a principle of general application in Anglo–American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated a party.... * * * A judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings.' ") (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S.Ct. 115, 85 L.Ed. 22 (1940) (n.2 and other citations omitted)), *followed by U.S. v. M.J. Kelley Corp.*, 995 F.2d 656, 661–62 (6th Cir.1993). *See, e.g., Taylor v. Powell*, 2010 WL 4340626, *5 (E.D.Mich. Oct. 27, 2010) (Marianne Battani, J.) (declining to apply collateral estoppel, noting *inter alia*, "As discussed in *Monat*, the ability of a party to obtain appellate review is critical in the fairness analysis. * * * [A]ppellate review of the consent issue was, as a practical matter, unavailable.") (citing RESTATEMENT 2D OF JUDGMENTS § 28(1)); *Hirmuz v. City of Madison Heights*, 469 F.Supp.2d 466, 478–79 (E.D.Mich.2007) (Paul Borman, J.) ("The question of the alleged fabricated confession presents a different problem. * * * [A]lthough the plaintiff did actually litigate this issue in the criminal proceedings, the plaintiff ultimately was acquitted. * * * The state trial judge's decision on the voluntariness of the plaintiff's confession was not appealable because of the plaintiff's acquittal, and collateral estoppel does not apply.") (citing RESTATEMENT 2D OF JUDGMENTS § 28). *Accord Schriber v. Droste*, 2006 WL 2086019, *2 (W.D.Mich. July 25, 2006) (Richard Alan Enslen, J.) (applying Michigan law and rejecting contention that "the Court erred by treating Plaintiffs' inability to seek appellate review of Defendants' fee as a dispositive factor [in refusing collateral estoppel] under *Monat* ... (Mich. 2004) and the Restatement (Second) of Judgments § 28").

*Issue 2. Bankruptcy Court Erred in Concluding that Henney's Violation of Michigan's "Zero Tolerance for Alcohol for Minors Driving a Vehicle" Statute Necessarily Established Intoxication.*

Alternately, the bankruptcy court found that Henney had violated MICH. COMP. LAWS § 257.625(6), which in June 2001 provided that someone younger than 21 years

shall not operate a vehicle upon a highway or other place open to the general public or generally accessible to motor vehicles ... within this state if the person has *any bodily alcohol content.* As used in this subsection, *"any bodily alcohol content" means* either of the following:

(a) An alcohol content of 0.02 grams or more but less than 0.08 grams per 100 milliliters of blood, per 210 liters of

breath, or per 67 milliliters of urine. . . .

(b) *Any presence of alcohol within a person's body resulting from the consumption of alcoholic liquor,* other than consumption of alcoholic liquor as a part of a generally recognized religious service or ceremony.

Emphasis added. As Henney accurately notes, Henney Br at 24, this statute makes no reference to intoxication, and proof of intoxication is in no way required to establish a violation. So far as the record reflects, and with no assertion to the contrary by plaintiff/creditor Rumfield, the jury was never instructed on the elements of MICH. COMP. LAWS § 257.625(6) or asked to decide whether Henney violated it, and the jury never made any finding as to whether Henney violated it. Moreover, as Henney points out (Henney Reply at 9 n. 6), it is not uncontroverted that he had any measurable blood-alcohol level at the time of the accident, as both sides' expert toxicologists that his BAC could have been zero at that time, *see* ROA 16 Ex M at 150 and Ex S at 185.

In any event, even assuming *arguendo* that Henney violated MICH. COMP. LAWS § 257.625(6) on the night of the accident, that would not necessarily establish that he was intoxicated, only that he had some alcohol whatsoever present in his body resulting from the consumption of alcoholic liquor.[8] In other words, Henney could have violated MICH. COMP. LAWS § 257.625(6) by consuming the slightest amount of alcoholic liquor which did not impair his physical or mental function in any way, i.e., which did not render him intoxicated within the intendment of MICH. COMP. LAWS § 257.625(1)(a) (the subjective test for operating while intoxicated) or MICH. COMP. LAWS § 257.625(1)(b) (the objective *or per se* test for operating while intoxicated).

Indeed, Henney cogently argues (Reply at 10–11), if the Michigan Legislature wished to deem any blood-alcohol content by a minor to constitute intoxication in the motor-vehicle context, it could have done so by adding that as a third alternative test for "operating while intoxicated", a subsection (c), in MICH. COMP. LAWS § 257.625(1). The Legislature did not do so, and this court may not read words into the statutory definition of operating while intoxicated which the people's elected representatives chose not to insert. *See U.S. v. Wilcox,* 2010 WL 55964, *5 (W.D.Mich. Jan.4, 2010) (Paul L. Maloney, C.J.) ("this court lacks the authority to read a fraud or deception element into 18 U.S.C. § 1028A(a)(1) when Congress chose not to explicitly require such an element. If Congress wished to require proof of fraud or proof of deception different from or beyond that which inheres in the words they chose, they knew how to do so and could have done so expressly.") (citing *First American Title Co. v. Devaugh,* 480 F.3d 438, 445 (6th Cir.2007) (Griffin, J.) (after noting that MICH. COMP. LAWS § 15.443(d) prohibited public bodies from re-selling information which they obtained for free from county register of deeds, Circuit concluded that absence of no-resale provision in subsection governing information sold to private parties meant that Michigan Legislature did not intend to impose no-resale provision in the latter context), *reh'g & reh'g en banc denied* (6th Cir. July 12, 2007) (citing *Marx v. Centran Corp.,* 747 F.2d 1536, 1545 (6th Cir.1984))

---

**8.** Plaintiff/creditor Rumfield offers no authority, and no logical reason, in support of his conclusory assertion that "reviewing the 'zero tolerance' statute and similar acts in combination with the Dramshop Act, it is apparent that a minor who has drunk any alcohol is intoxicated in the eyes of the State." P's Opp at 15.

(after noting that 12 U.S.C. § 93(a) contained an express cause of action and § 93(b) did not, Circuit remarked, "this difference between the two subsections leads to the conclusion that 'when Congress wishes to provide a private damages remedy, it knew how to do so and did so expressly.'") (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979))).

As noted above, the court declines to go as far as defendant/debtor Henney urges (Henney Br at 28–30 and Reply at 12) and grant him summary judgment outright on the issue of his own intoxication. Based on the record as it stands, this court cannot confidently say that there is no genuine issue on the intoxication issue in either direction, as would be required to short-circuit argument and deliberation on this crucial issue. The bankruptcy court is well equipped to address that issue, inviting further evidentiary submissions and briefing if need be. As the trial court, it may elect to resolve the issue by summary judgment or by trial, as the ultimate record dictates.

### ORDER

Defendant/debtor Matthew Henney's appeal [document # 12] is **SUSTAINED.**

The December 11, 2006 ruling of the U.S. Bankruptcy Court for the Western District of Michigan regarding Nondischargeability under 11 U.S.C. § 523(a)(9) is **VACATED.**

The grant of summary judgment to plaintiff/creditor Timothy Rumfield thereon is **VACATED.**

The denial of summary judgment to defendant/debtor Matthew Henney thereon is **VACATED.**

This case is **REMANDED** to the U.S. Bankruptcy Court for the Western District of Michigan for a determination of whether defendant/debtor Matthew Henney was intoxicated as defined by Mich. Comp. Laws § 257.625(1) (2001) at the time of the automobile accident on June 16, 2001, which determination that court shall in turn use to determine whether Matthew Henney's judgment debt is nondischargeable under 11 U.S.C. § 523(a)(9).

This is *not* a final and immediately-appealable order.

### IT IS SO ORDERED.